# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          : Chapter 7
                                                :
HRP Myrtle Beach Holdings, LLC *et al.*,[1]     : Case No. 08-12193 (KJC)
                                                :
          Debtors                               : Jointly Administered
                                                :
                                                : **Related Doc. No.** _____
                                                :

**ORDER (I) AUTHORIZING SALE OF HARD ROCK PARK FREE AND CLEAR OF
ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II)
ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN DESIGNATED CONTRACTS AND UNEXPIRED LEASES**

This matter is before the Court on the motion[1] (the "Sale Motion") [Docket No. ___],

dated February 9, 2009, of Alfred Giuliano, as Chapter 7 Trustee (the "Trustee") on behalf of the

bankruptcy estate of HRP Myrtle Beach Operations, LLC (the "Selling Debtor," and together

with the other, related debtors, the "Debtors"), and for entry of an order, pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and

9014 approving the asset purchase agreement, a copy of which was attached as Exhibit A to the

Sale Motion, (the "Asset Purchase Agreement") by and among the Trustee and FPI MB

Entertainment LLC (the "Purchaser"), and such other agreements to be entered into and among

the parties as contemplated therein, and authorizing the sale of the Purchased Assets to the

---

[1]      The Debtors are the following seven entities (the last four digits of their respective
taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC
(1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC
(1625), HRP Myrtle Beach Capital Corp (4272), HRP Myrtle Beach Management, LLC (0297),
HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877). The
address of each of the Debtors is 211 George Bishop Parkway, Myrtle Beach, South Carolina
29579.

Purchaser (the "Sale") free and clear of all liens, claims, encumbrances, and other interests (all

such liens, claims, encumbrances and other interests shall be referred to collectively as the

"Liens") other than any Permitted Liens and Assumed Liabilities; and the Court having heard

statements of counsel and the evidence presented in support of the relief requested by the Trustee

in the Sale Motion at a hearing before the Court on February 17, 2009 (the "Sale Hearing"); and

it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal

and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the

relief granted herein; and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

**<u>Jurisdiction, Final Order and Statutory Predicates</u>**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

---

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Asset Purchase Agreement (as defined herein) and the Sale Motion, as applicable.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The statutory predicates for the relief requested in the Sale Motion are sections

105(a), 363(b), (f), and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2),

6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014.

### Notice of the Sale Hearing

D.      Actual written notice of the Sale Hearing, the Sale Motion, the Sale and a

reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein has been afforded to all interested persons and entities, including, but not

limited to (a) the United States Trustee; (b) counsel to the administrative agents for the Debtors'

prepetition secured lenders; (c) counsel to the Debtors' postpetition lenders; (d) counsel for the

Junior DIP Lenders; (e) counsel for the Senior Indenture Trustee; (f) counsel for the Junior

Indenture Trustee; (g) counsel for the Revolving Credit Agent and Senior Post-Petition Agent;

(h) counsel to the Debtors; (i) creditors holding the twenty (20) largest unsecured claims against

the each of the Debtors as included in the Debtors' Chapter 11 Schedules or their legal counsel,

if known; (j) unsecured creditors with a scheduled claim in excess of $25,000 as identified in the

Selling Debtor's Schedules; (k) any known secured creditors as listed in Schedule D of the

Debtors' Chapter 11 Schedules; (l) parties as listed in Schedule G of the Debtors' Chapter 11

Schedules; (m) all persons or entities known or reasonably believed to have asserted a Lien in

any of the Purchased Assets; (n) the United States Department of Justice; (o) counsel to the

Purchaser; (p) all persons or entities known or reasonably believed to have expressed an interest

in acquiring the Purchased Assets; (q) the Attorney General for the State of South Carolina; (r)

the United States Environmental Protection Agency; (s) South Carolina Environmental

Regulator; (t) Internal Revenue Service; (u) South Carolina Department of Revenue; (v) South

Carolina Dept. of Labor, Licensing and Regulation; (w) Horry County Treasurer's Office; (x)

Horry County Property Assessor; (y) City of Myrtle Beach, Administration; (z) any party who

has requested notice and service of papers pursuant to Bankruptcy Rule 2002.

E.     As evidenced by the affidavits of service previously filed with this Court, proper,

timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale has

been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and

Bankruptcy Rules 2002, 6004, 6006 and 9014.  The foregoing notice described in paragraph D

was good, sufficient and appropriate under the circumstances, and no other or further notice of

the Sale Motion, the Sale Hearing or the Sale is required.

F.     The disclosures made by the Trustee concerning the Asset Purchase Agreement,

the Sale and the Sale Hearing were good, complete and adequate.

### Good Faith of Purchaser

G.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined in

section 101(31) of the Bankruptcy Code.

H.     Purchaser is purchasing the Purchased Assets in good faith and is a good faith

buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to

the full protection of that provision, and otherwise has proceeded in good faith in all respects in

connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Trustee was

free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser

agreed to subject its bid to competitive bidding procedures at the Sale Hearing; (c) Purchaser in

no way induced or caused the bankruptcy filing by the Debtors; (d) all payments to be made by

the Purchaser and other agreements or arrangements entered into by the Purchaser in connection

with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the

Bankruptcy Code by any action or inaction; (f) no common identity of controlling stockholders

exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Asset

Purchase Agreement and any other agreements or instruments related thereto was at arms' length

and in good faith.

## Highest and Best Offer

I.      The Purchased Assets have been extensively marketed by the Trustee and, before

that, by the Debtors and their professionals, as evidenced by, among other things, the Debtors'

Motion to Approve an Order (I)(A) Approving Procedures in Connection With the Sale of the

Debtors' Assets; (B) Scheduling the Related Auction to Consider Approval of Sale; (C)

Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired

Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related

Relief; and (II)(A) Authorizing the Sale of Such Assets Pursuant to the Modified Purchase

Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving

the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related

Thereto; and (C) Granting Related Relief (the "Chapter 11 Sale Motion") pursuant to which the

Debtors sought approval of certain procedures in connection with a proposed sale of the Debtors'

assets. Notwithstanding, their efforts, the Debtors were unable to generate any "qualifying

offers," as that term is defined in the Chapter 11 Sale Motion and the Order approving the

Chapter 11 Sale Motion, for the sale of the Selling Debtor's assets.

J.      The Trustee offered the Purchased Assets for sale to any party that would pay the

highest and best price for the Purchased Assets. The sales process afforded a full, fair and

reasonable opportunity for any person or entity to make a higher or otherwise better offer to

purchase the Purchased Assets. The sales process was conducted in a noncollusive, fair and

good faith manner and a reasonable opportunity has been given to any interested party to make a

higher and better offer for the Purchased Assets.

K.     The Asset Purchase Agreement constitutes the highest and best offer for the

Purchased Assets, and will provide a greater recovery for the Selling Debtor's estate than would

be provided by any other available alternative.  The Trustee's determination that the Asset

Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a

valid and sound exercise of the Trustee's business judgment.

L.     The Asset Purchase Agreement represents a fair and reasonable offer to purchase

the Purchased Assets under the circumstances of this chapter 7 case.  No other person or entity or

group of entities has offered to purchase the Purchased Assets for greater economic value to the

Selling Debtor's estate than the Purchaser as set forth in the Asset Purchase Agreement

M.     Approval of the Sale Motion and the Asset Purchase Agreement, and the

consummation of the transactions contemplated therein, is in the best interests of the Selling

Debtor, its creditors, the estate and other parties in interest.

## No Fraudulent Transfer

N.     The consideration provided by the Purchaser pursuant to the Asset Purchase

Agreement is fair and adequate and constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession or the District of Columbia.

O.     The Purchaser is not a mere continuation of the Selling Debtor or its estate and

there is no continuity of enterprise between the Purchaser and the Selling Debtor.  The Purchaser

is not holding itself out to the public as a continuation of the Selling Debtor.  The Purchaser is

not a successor to the Selling Debtor or its estate and the Sale does not amount to a

consolidation, merger or de facto merger of Purchaser and the Selling Debtor. The transactions contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in order to escape liability for the Selling Debtor's debts.

**Validity of Transfers and Sale**

P.      The Trustee has full power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

Q.      The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer, and vests or will vest the Purchaser with all right, title, and interest of the Trustee and the Selling Debtor to the Purchased Interests free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.

**Section 363(f) Is Satisfied**

R.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and the Permitted Liens), be liable for any of such Liens, including, but not limited to, Liens in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors; (4)

any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (7) any theories of successor liability.

S.      The Trustee may sell the Purchased Assets to Purchaser free and clear of all Liens against the Trustee, the Selling Debtor, its estate or any of the Purchased Assets (except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  With respect to any and all entities asserting a Lien, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and

instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Lien, with such Lien to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the assets free and clear of such Lien, (iii) such Lien is in *bona fide* dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

T.    Those holders of Liens against the Selling Debtor, its estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens, if any, in each instance against the Selling Debtor, its estate, any of the Purchased Assets, except as otherwise specifically provided by the Asset Purchase Agreement or this Order attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Selling Debtor and its estate may possess with respect thereto.

## Compelling Circumstances for an Immediate Sale

U.    To maximize the value of the Purchased Assets and to preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased

Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

      V.     Given all of the circumstances of this chapter 7 case and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

      W.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED
AND DECREED THAT:

### General Provisions

1.    The relief requested in the Sale Motion is granted and approved and the Sale contemplated thereby is approved as set forth in this Order.

2.    All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

### Approval of the Asset Purchase Agreement

3.    The Asset Purchase Agreement and all ancillary or related documents, agreements or instruments and all of the terms and conditions thereof are hereby approved.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Trustee, the Selling Debtor and its estate, all creditors of, and holders of equity interests in, the Selling Debtor (whether known or unknown), any holders of Liens against or on all or any portion of the Purchased Assets, the Purchaser and all successors and assigns of the Purchaser and the Purchased Assets. This Order shall inure to the benefit of the Trustee, the Selling Debtor, its estate, its creditor, the Purchaser and their respective successors and assigns.  The Asset Purchase Agreement shall not be subject to rejection.

### Transfers of the Purchased Assets

6.      Pursuant to sections 105(a), 363(b), 363(f), 365(a) and 365(f)(1) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Trustee's receipt of the Purchase Price, shall be free and clear of all Liens

except any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement. Upon

the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only

to the Permitted Liens and Assumed Liabilities. Pursuant to section 363(f) of the Bankruptcy

Code, the transfer of title to the Purchased Assets shall be free and clear of (a) any and all Liens,

including, without limitation, all Liens listed on Exhibit A hereto, except for Permitted Liens,

and (b) all interests, liabilities, obligations or claims, including, without limitation, all "claims"

within the meaning of section 101(5) of the Bankruptcy Code and any claims pursuant to any

successor or successor-in-interest liability, control group liability or consolidated group liability

theory. Except as otherwise specifically provided by the Asset Purchase Agreement or this

Order, all Liens shall attach solely to the proceeds of the Sale with the same validity, priority,

force and effect that they will have as against the Purchased Assets, subject to any claims and

defenses the Trustee, the Selling Debtor and its estate may possess with respect thereto.

      7.    Except as expressly permitted or otherwise specifically provided by the Asset

Purchase Agreement or this Order, all persons and entities holding Liens or interests in all or any

portion of the Purchased Assets (other than Permitted Liens and the Assumed Liabilities) arising

under or out of, in connection with, or in any way relating to the Selling Debtor, the Purchased

Assets, the operation of the Selling Debtor's business prior to the Closing Date or the transfer of

the Purchased Assets to Purchaser, hereby are forever barred, estopped and permanently enjoined

from asserting against the Purchaser or its successors or assigns, their property, the Purchased

Assets, such persons' or entities' Liens or interests in and to the Purchased Assets. On and after

the Closing Date, the Trustee, the Purchaser and each such creditor is authorized to execute such

documents and take all other actions as may be necessary to release Liens (except Permitted

Liens) on the Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

8.      The Purchaser and, as the case may be, the Trustee, are authorized to remit payment directly to third parties in accordance with Section 6.2 of the Asset Purchase Agreement, and any agreement between the Trustee and the Senior Revolving Lenders in respect of administrative claims, pursuant to wire transfer or other payment instructions to be provided to them. Without limiting the foregoing, any payments to be made by or due from the Trustee to the Purchaser or a third party in accordance with the terms of the Asset Purchase Agreement shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

9.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser, in accordance with the terms of the Asset Purchase Agreement and this Order.

10.      All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

11.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any appropriate in order to cancel any of the Liens and other encumbrances of record except the Permitted Liens.

12.      If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee, prior to the Closing, in proper form for filing and executed by

the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

easements, and any other documents necessary for the purpose of documenting the release of all

Liens or interests which the person or entity has or may assert with respect to all or any portion

of the Purchased Assets, the Trustee and the Purchaser are hereby authorized, to execute and file

such statements, instruments, releases and other documents on behalf of such person or entity

with respect to the Purchased Assets.

13.     This Order is and shall be binding upon and govern the acts of all persons and

entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing persons and entities is hereby directed to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Asset Purchase Agreement.

14.     The proceeds from the sale of the Purchased Assets, less any normal and

customary costs of closing including real estate taxes (excluding amounts paid by the Purchaser

in accordance with the terms of the Asset Purchase Agreement), and net of an amount equal to

(A) the amount of $1,273,250 for the benefit and use of the Selling Debtor, (B) the fees and

expenses of Raymond James with respect to its role in the sale process, and (C) administrative

expenses in an amount and subject to terms and documentation to be separately agreed between

the Trustee and the Senior Revolving Lenders, shall be used first to pay (and shall be paid

directly to) the Senior Revolving Lenders until their claims are paid in full, including, without limitation, claims for any and all principal, unpaid hedging obligations, interest, attorneys' fees and expenses and advances made during the Chapter 7 Case, in each case, to the fullest extent provided under the Pre-Petition Loan Documents.  Any remaining proceeds from the sale of the Purchased Assets (after the claims of the Senior Revolving Lenders have been paid in full) shall be delivered to the Trustee for distribution among the creditors of the Bankruptcy Estate in accordance with the order of priority applicable to their claims;

## **Other Provisions**

15.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien (other than a Permitted Lien) or interest arising under, out of, in connection with or in any way relating to the Selling Debtor, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) any claim of successor liability or similar theory or doctrine, including with respect to both (a) and (b), without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the

Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with, on or in relation to the Purchased Assets.

16.    Except for the Permitted Liens and the Assumed Liabilities or as otherwise expressly provided for in this Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Trustee, the Selling Debtor or the estate arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, the Selling Debtor or any of its or their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, the Selling Debtor or the estate or any obligations of the Trustee, the Selling Debtor or the estate arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of, or businesses operated with, on or in relation to, any of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Liens and other claimants. The consideration given by the Purchaser

shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens and claims against or interests in the Selling Debtor or the Purchased Assets.

17.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and the Sale is duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.     Nothing contained in any order of any type or kind entered in (i) this chapter 7 case or any related proceeding subsequent to entry of this Order, shall conflict with, derogate from, or affect in any manner, the provisions of the Asset Purchase Agreement or the terms of this Order.

19.     Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

20.     Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser any coverage, rights or benefits under the liability insurance policies of the Selling Debtor with respect to claims arising out of or relating to any occurrence or event that happened prior to Closing, notwithstanding the transfer to the Purchaser, to the extent assignable or transferable in accordance with the terms and conditions of the applicable insurance policies

or applicable Law, all of the Company's insurance policies and rights and benefits related to the
Purchased Assets or Assumed Liabilities.

21.      No bulk sales law or any similar law of any state or other jurisdiction applies in
any way to the Sale.

22.      The failure specifically to include any particular provision of the Asset Purchase
Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being
the intent of the Court that the Asset Purchase Agreement be authorized and approved in its
entirety.

23.      The Asset Purchase Agreement and any related agreements, documents or other
instruments may be modified, amended or supplemented by the parties thereto and in accordance
with the terms thereof, without further order of the Court, provided that any such modification,
amendment or supplement does not have a material adverse effect on the Debtor's estate.

24.      The Court shall retain jurisdiction to, among other things, interpret, implement,
and enforce the terms and provisions of this Order, the Asset Purchase Agreement, all
amendments thereto and any waivers and consents thereunder and each of the agreements
executed in connection therewith to which the Trustee is a party or which has been assigned by
the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or
relating in any way to the Sale.

25.      In the event the Asset Purchase Agreement is validly terminated in accordance
with its terms (or if a sale is delayed so that the Purchase Price is reduced below $22 million), the
Trustee is hereby authorized to sell and convey (on a date to be agreed) the Purchased Assets to
the Senior Revolving Lenders (or their designee) on a full credit bid basis pursuant to Section
363(k) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, and

otherwise subject to all of the terms and conditions (to the extent applicable or relevant), and all Purchaser's protections and benefits, as set forth herein and in the Asset Purchase Agreement and related documents.

26.    The procedures for the assumption and assignment of certain executory contracts and unexpired leases designed by Purchaser are approved as follows:

(a)    On or before February 27, 2009, the Purchaser shall advise the Trustee which, if any, of the designated executory contracts and unexpired leases the Purchaser desires to have assigned to it.

(b)    No later than February 28, 2009, the Trustee shall promptly file a motion seeking to assume and assign the designated executory contracts and unexpired leases to Purchaser (the "Assumption and Assignment Motion"), and the Trustee shall serve a copy of the Assumption and Assignment Motion upon all nondebtor parties to all executory contracts and unexpired leases designated by the Purchaser for assumption and assignment to the Purchaser. The Trustee shall include with the service of the Assumption and Assignment Motion, a copy of financial documents evidencing the Purchaser's financial credibility, willingness and ability of the Purchaser to perform under the designated executory contracts and unexpired leases.

(c)    All nondebtor parties to any executory contracts and unexpired leases designated to be assumed and assigned to the Purchaser by and through the Assumption and Assignment Motion shall have until March __, 2009 at _____ _.m. to file an objection to the proposed assumption and assignment of any executory contracts and unexpired leases to which it is a party.

(d)    The Bankruptcy Court shall consider the Assumption and Assignment Motion at a hearing on March 6, 2009 at _____ _.m., and any objections thereto. At the hearing to consider the Assumption and Assignment Motion, the Trustee will present evidence to prove the Purchaser's financial credibility, willingness and ability to perform under the designated executory contracts and unexpired leases, and the Court and other interested parties therefore will have the opportunity to evaluate the Purchaser's ability to provide adequate assurance of future performance under the contracts or leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

(e)    Any objection to the cure amount or adequate assurance of future performance that is not timely filed shall be deemed waived.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Sale Motion or otherwise waived.

29.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

30.     To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement, the terms of this Order shall control.

31.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern.

DATE: February __, 2009

SO ORDERED:

_____

HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

1.     Horry County real property and personal taxes and Rural Fire District and Stormwater

Assessments for 2008 and prior years, now due and payable, plus penalties and interest,

including, without limitation, as follows:

| | | | |
|---|---|---|---|
| 172-00-05-015 | Receipt No. 2008-099283 | $ | 154,010.11 |
| 172-00-05-256 | Receipt No. 2008-099284 | $ | 8,412.14 |
| 172-00-05-269 | Receipt No. 2008-099285 | $ | 735.61 |
| 172-00-05-192 | Receipt No. 2006-293124A | $ | 54.94 |
| 172-00-05-194 | Receipt No. 2006-293125A | $ | 5,505.17 |
| 172-00-05-195 | Receipt No. 2006-293126A | $ | 740.64 |

2.     First Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach

Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as administrative

agent and collateral agent on behalf of the Secured Parties, dated March 30, 2006, recorded on

March 30, 2006, in Mortgage Book 4470 at page 375, records of Horry County, and Partial

Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 2,

2006, in Mortgage Book 4601 at page 1400, records of Horry County.

3.     UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 402,

records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and

Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving Lenders;

amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1406, and

amendment filed on July 3, 2006, in Mortgage Book 4601 at page 1408; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2680, and termination of Mortgage Book

4601 at page 1406 in Mortgage Book 5001 at page 2663, records of Horry County.

4.    Senior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 406, and Partial Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3, 2006, in Mortgage Book 4601 at page 1410, records of Horry County.

5.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 433, records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Senior Secured Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1415, and amendment filed on July 3, 2006 in Mortgage Book 4601 at page 1417; terminated on December 3, 2007, in Mortgage Book 5001 at page 2681, and termination of Mortgage Book 4601 at page 1415 in Mortgage Book 5001 at page 2684, records of Horry County.

6.    Junior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 437, and Partial Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3, 2006, in Mortgage Book 4601 at page 1419, records of Horry County.

7.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 464, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Junior Secured Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1425, and amendment filed July 3, 2006 in Mortgage Book 4601 at page 1427; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2682, and termination of Mortgage Book 4601 at page 1425 in Mortgage Book 5001 at page 2685, records of Horry County.

8.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2665, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving Lenders.

9.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2670, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Senior Secured Noteholders.

10.     UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2675, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Junior Secured Noteholders.

11.     Notice of Project Commencement given by Sturzenbecker Construction Co., Inc. filed on May 15, 2007, in Lien Book 150 at page 1651, records of Horry County.

12.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on July 13, 2007, in Lien Book 151 at page 2290, records of Horry County.

13.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on September 17, 2007, in Lien Book 153 at page 311, records of Horry County.

14.     Notice of Mechanic's Lien and Statement of Account in the amount of $324,028.92, Jerry's Plumbing, LLC, Petitioner vs. HRP Myrtle Beach Operations, LLC and Hensel Phelps Construction Co., Respondents, filed on June 18, 2008, in Lien Book 160 at page 2375, records

of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on July 22,

2008, in Lien Book 163 at page 750, records of Horry County. Notice of Lis Pendens filed on

July 10, 2008 as 2008-CP-26-1995, records of Horry County Clerk of Court and was cancelled

on July 22, 2008.

15.     Statement and Notice of Mechanic's Lien in the amount of $12,249.00 from Otis Elevator

company to Hensel Phelps Construction Co., filed on July 11, 2008, in Lien Book 163 at page

75, records of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on

July 22, 2008, in Lien Book 163 at page 744, records of Horry County.

16.     Notice and Certificate of Mechanic's Lien in the amount of $101,141.30, Neuman Pools,

Inc. Plaintiff vs. HRP Myrtle Beach Operations, LLC, d/b/a Hard Rock Park, Hensel Phelps

Construction Co. and Deutsche Bank Trust Company Americas, filed on July 15, 2008, in Lien

Book 163 at page 236, records of Horry County. Said lien was cancelled by Notice of 17.

        Cancellation of Mechanic's Lien filed on July 17, 2008, in Lien Book 163 at page 315,

records of Horry County.

18.     Notice and Certificate of Mechanic's Lien in the amount of $329,308.00, SCS Interactive,

Inc., Claimant vs. HRP Myrtle Beach Operations, LLC, Owner, filed on August 4, 2008, in Lien

Book 163 at page 1904, records of Horry County.

19.     Claim of Lien in the amount of $5,964.92, Hertz Equipment Rental Corp., Claimant and

HRP Myrtle Beach Operations, LLC, Owner, Hensel Phelps Construction Company, Contractor,

filed on August 5, 2008, in Lien Book 163 at page 2051, records of Horry County. Said lien was

cancelled by Satisfaction of Lien filed on August 22, 2008, in Lien Book 164 at page 399,

records of Horry County.

20.     Notice of claim of Mechanic's Lien and Statement of Account in the amount of

$964,609.10, Premier Rides, Inc., Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant,

filed on August 13, 2008, in Lien Book 163 at page 2989, records of Horry County.  Affidavit of

Service filed on August 18, 2008, in Lien Book 163 at page 3328, records of Horry County.

21.     Amended Notice of Claim of Mechanic's Lien and State of Account filed on September

23, 2008, in Lien Book 164 at page 3011, records of Horry County.  Affidavit of Service filed on

October 1, 2008, in Lien Book 165 at page 1842.  Second Amended Notice of Claim of

Mechanic's Lien and Statement of Account filed on October 8, 2008, in Lien Book 165 at page

2727, increases the lien amount to $1,466,676.90, which amendment was re-recorded October

17, 2008, Lien Book 166 at page 387, records of Horry County.  Affidavit of Service filed

October 17, 2008 in Lien Book 166 at page 378.

22.     Notice of Mechanic's Lien in the amount of $3,625.00, Grand Strand Fire Sprinklers of

SC, Inc., Petitioner, vs. HRP Myrtle Beach Operations, LLC, Respondent, filed on September 4,

2008, in Lien Book 164 at page 1614, records of Horry County.

23.     Notice of Mechanic's Lien and Statement of Account in the amount of $372,256.14,

Morris Architects, Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant, filed on

September 30, 2008, in Lien Book 165 at page 1630, records of Horry County.

24.     Complaint filed on February 20, 2008, in Civil Action 2008-CP-26-1423, entitled Marsha

A. Widmer, Plaintiff vs. HRP Myrtle Beach Operations, LLC d/b/a Hard Rock Park, records of

Horry County Clerk of Court.

25.     Notice and Certificate of Mechanic's Lien in the amount of $25,577.15, on behalf of

GEM Industries, Inc. against HRP Myrtle Beach Operations, LLC, filed on October 23, 2008, in

Lien Book 166 at page 1200, records of Horry County.

26.     Claim of Lien filed by Hertz Equipment Rental Corp. #9316 against HRP Global Management, LLC for HRP Myrtle Beach Operations, LLC, in the amount of $23,579.95, filed on November 13, 2008, in Lien Book 166 at page 2752, records of Horry County.

27.     Printout from Grand Strand Water & Sewer Authority computer showing reactivation charge of $2,520.00.

28.     The rights of any party to possession of the Premises.

29.     Any assessments, water rents and/or charges, sewer rents and/or charges, sewer hook-up charges, fire service, gas charges, common charges (i.e. condominium or association charges or dues) and other municipal charges that would constitute a lien and be currently due and payable.

30.     Unfiled mechanic's liens and/or materialmen's liens for which the statutory period for filing has not expired.