IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| HRP Myrtle Beach Holdings, LLC *et al.*,[1] | : | Case No. 08-12193 (KJC) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |

**MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, TO SHORTEN AND LIMIT NOTICE OF MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING SALE OF HARD ROCK PARK FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN DESIGNATED CONTRACTS AND UNEXPIRED LEASES**

Alfred T. Giuliano, Chapter 7 Trustee (the "Trustee"),[2] hereby moves, pursuant to Del. Bank. L.R. 2002-1 and 9006-1(e), for entry of an Order (i) shortening notice of the Trustee's motion for entry of an order authorizing sale of Hard Rock Park free and clear of all liens, claims, encumbrances and other interests (the "Sale Motion") to February 17, 2009 at 10:00 a.m. (the "Sale Motion Hearing"), (ii) extending the deadline to permit any party objecting to the relief sought by the Sale Motion to object at any time up until and through the time of the Sale Motion Hearing, and (iii) limiting notice of the Sale Motion, and in support thereof, the Trustee respectfully states as follows:

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC (1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877). The address of each of the Debtors is 211 George Bishop Parkway, Myrtle Beach, South Carolina 29579.

[2] Capitalized terms used herein as defined terms and not otherwise defined shall have those meaning ascribed to them in the Sale Motion.

## BACKGROUND

1. The Debtors are seven affiliated entities that directly or indirectly own and/or operate the Hard Rock Park (the "Park"), a 50 acre destination theme part located in Myrtle Beach, South Carolina.

2. On September 24, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in an attempt to restructure their debt and refocus and further develop their marketing and other operational strategies for the Park.

3. On October 21, 2008, the Debtors filed a motion to retain Raymond James & Associates ("Raymond James") as investment banker and financial advisor pursuant to 11 U.S.C. § 328(a) (the "Chapter 11 Application") [Docket No. 91]. On November 26, 2008, the Court entered an Order granting the Chapter 11 Application [Docket No. 213].

### The Debtors' Sale Efforts

4. As more fully set forth in the Sale Motion, the Debtors, the Trustee and their respective professionals, including Raymond James, have extensively marketed the Debtors' assets. Specifically, beginning in November 2008, Raymond James engaged in an extensive marketing process with regard to the sale of the Debtors' assets pursuant to section 363 of the Bankruptcy Code. Specifically, the Debtors contacted two hundred and six (206) interested parties, and forwarded confidentiality agreements to one hundred and four (104) interested parties, of which forty-six (46) interested parties returned executed confidentiality agreements. The interested parties were provided the opportunity to execute confidentiality agreements and those interested parties that executed a confidentiality agreement were provided substantial information concerning, and access to, the Debtors, including, but not limited to, presentations

and discussions with the Debtors' management; access to an extensive online data room containing detailed financial information, operating statistics, material agreements and other operational and financial information of the Debtors. Additionally, nine (9) of the interested parties conducted one or more on-site tours of the Park.

5. On November 10, 2008, the Debtors filed a Motion to Approve an Order (I)(A) Approving Procedures in Connection With the Sale of the Debtors' Assets; (B) Scheduling the Related Auction to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Such Assets Pursuant to the Modified Purchase Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief. Filed by HRP Myrtle Beach Holdings, LLC (the "Chapter 11 Sale Motion") pursuant to which the Debtors sought approval of certain procedures in connection with a proposed sale of the Debtors' assets (the "Assets") [Docket No. 146]. On November 20, 2008, the Court entered an order approving the proposed sale procedures (the "Chapter 11 Sale Motion Order") [Docket No. 194]. The Chapter 11 Sale Motion Order set a deadline of December 12, 2008 for submitting bids, and scheduled an auction on December 15, 2008, if necessary. Unfortunately, the Debtors were unable to generate any qualifying offers as provided under the Chapter 11 Sale Motion Order, and were therefore unable to sell the Assets. On or about December 30, 2008, the Debtors informed the Court of their intention to seek conversion of their Chapter 11 cases to Chapter 7 of the Bankruptcy Code.

6. On January 2, 2009, the Debtors filed a motion to convert the bankruptcy cases to Chapter 7 (the "Motion to Convert") [Docket No. 324]. On January 6, 2009 (the "Conversion Date"), the Court entered Granting the Motion to Convert [Docket No. 335], and the Trustee was appointed on an interim basis.

7. Since his appointment, the Trustee has worked with the Debtors' secured lenders to establish a procedure for the sale of the Park and Raymond James has continued to market the Park to prospective purchasers. Since the Conversion Date, forty-five (45) interested parties were contacted, including twenty-five (25) additional interested parties that were not previously contacted in the Chapter 11 sale process. Of the forty-five (45) interested parties that were contacted, thirty-nine (39) executed confidentiality agreements and were provided substantial information concerning the Debtors' assets. Additionally, thirteen (13) of the interested parties conducted on-site tours of the Park since the conversion of the Chapter 11 cases to Chapter 7. To date, Raymond James has received formal offers from 11 of the interested parties for the Debtors' Assets. The Purchaser's offer of $25,000,000 is the highest and best offer received by the Trustee for certain of the assets (as more fully set forth in the Sale Motion, the "Purchased Assets") of HRP Myrtle Beach Operations LLC.

### The Sale Motion

8. By and through the Sale Motion, the Trustee seeks authority to (i) approve the sale of the Purchased Assets to FPI MB Entertainment LLC (the "Purchaser") free and clear of all liens, claims, encumbrances and other interests, under sections 105, 363, and 365 of the Bankruptcy Code, pursuant to an asset purchase agreement dated February 9, 2009 (the "APA"), and (ii) authorizing the Trustee to enter into the APA and take all actions necessary to

consummate the sale of Purchased Assets, and (iii) establishing procedures for the assumption and assignment of certain designated executory contracts and unexpired leases.

9. The Purchaser has informed the Trustee that time is of the essence for the consummation of the sale and has required that the sale of the Purchased Assets close no later than February 20, 2009. Deutsche Bank Trust Company Americas ("DBTCA"), as agent (in such capacity, the "Senior Post-Petition Agent") for itself and Jefferies Finance LLC (collectively the "Senior Revolving Lenders"), has also required that the sale close as soon as possible.

10. The Memorial Day holiday weekend, the first long weekend of the summer vacation season, is May 23 to 25, 2009. Many people take advantage of the three-day Memorial Day weekend to take a short vacation to a nearby destination. As a result, Memorial Day usually is a busy weekend for theme parks. Moreover, the publicity and "buzz" generated is important to marketing a theme park during the rest of the summer. The Purchaser has advised the Trustee that if the Park is not open Memorial Day weekend, the Purchaser will suffer a significant revenue loss which impacts the Purchaser's valuation model and willingness to offer the Purchase Price.

11. The Purchaser expects that readying the Park for reopening will take at least ninety (90) days. There are numerous tasks that must be accomplished before the Park will be ready to reopen. Among other things, South Carolina safety regulations mandate annual maintenance of the Park's rides. These regulations include a requirement that the rides be disassembled, inspected and then reassembled. Selected rides must be re-vamped and new capital expenditures made. The rides and other equipment will need to be tested. Furthermore,

the Park's landscape and hardscape must be refurbished as necessary and a physical inventory of the goods and equipment made.

12. In addition, the Purchase has informed the Trustee that a marketing and public relations plan must be designed and implemented, merchandising must be arranged, new attractions and shows must be designed and produced, employees must be hired and trained, the food and beverage service must be planned and prepared and systems must be planned and integrated.

13. Finally, the Purchaser anticipates conducting a "soft opening" of the Park prior to the Memorial Day weekend. A soft opening is a private opening where friends and family and selected representative groups are invited to come experience the Park. This soft opening will permit management to test the park experience and to refine the operating strategy.

14. In order to open the Park available prior to the summer season, the Purchaser has required that the sale close no later than February 20, 2009. Section 2.1 of the APA provides that, in the event that the sale does not close by February 20, 2009, the Purchase Price shall be reduced by the sum of One Million Dollars ($1,000,000), and shall be further reduced in the amount of Fifty Thousand Dollars for each day after February 20, 2009 that the Closing does not occur.

## RELIEF REQUESTED

15. By this motion, the Trustee seek entry of a Order (i) scheduling a hearing to consider the Sale Motion at a hearing on February 17, 2009 at 10:00 a.m., and (ii) permitting any party objecting to the relief sought by the Sale Motion to object at any time up until and through the time of the hearing to consider the Sale Motion, and (iii) limiting notice of the Sale Motion.

**Shorten Notice and Extend Objection Deadline**

16. Local Rule 9006-1(c) provides in part: "Unless the Fed. R. Bankr. P. or these Rules state otherwise, all motion papers shall be filed and served in accordance with Local Rule 2002-1(b) at least fifteen (15) days (eighteen (18) days if service is by mail). . . prior to the hearing date. . . [where such service is made], the deadline for objection(s) shall be no later than five (5) days before the hearing date." By this Motion, the Trustee seeks, pursuant to Rules 2002 and 9006(c) of the Federal Rules of Bankruptcy Procedure and Rule 9006-(e)(1) Del. Bankr. L.R., to shorten the notice period so that the Court may consider the Sale Motion on February 17, 2009 at 10:00 a.m.

17. The Purchased Assets have been extensively marketed by the Debtors, the Trustee, and their respective professionals. After such marketing, the Trustee has determined that, subject to higher and better bids to be received at a hearing to consider the approval of the Sale Motion, the offer by the Purchaser represents the highest value for the Purchased Assets. Further, the Purchaser and the Senior Revolving Lenders have both required that any proposed sale of the Purchased Assets be closed by February 20, 2009. Finally, any additional delay will cause the Debtors' estates to incur additional administrative expenses and also will negatively impact on the Myrtle Beach community. Accordingly, the Trustee respectfully submits, considering the Sale Motion at a hearing on February 17, 2009 at 10:00 a.m. is in the best interests of the Debtors' estates and their creditors.

18. Delaware Local Bankruptcy Rule 9006-1(c) provides that the parties may not extend an objection deadline beyond forty-eight hours prior to the hearing without Court approval. Because the Trustee seeks to have the Sale Motion heard on an expedited basis, but still allow creditors and parties in interest a full and fair opportunity to review the Sale Motion

and respond, if appropriate, the Trustee seeks relief, pursuant to Del. Bankr. L.R. 9006-1(e), from the deadline for parties to file an objection to the Sale Motion imposed by the Local Rules. Accordingly, the Trustee seeks to extend the deadline to object to the Sale Motion at any time up until and through the time of the Sale Motion Hearing. The Trustee believes that extending the deadline for any party to object to the Sale Motion balances the needs of the Debtors' estates to have the relief sought by the Sale Motion considered in an expedited manner with the due process rights of parties to contest such relief.

### Limit Notice

19. Further, the Trustee seeks to limit notice pursuant to Local Bankruptcy Rule 2002-1(b), which provides:

> [I]n chapter 11 cases, all motions (except matters specified in Fed. R. Bank. P. 2002(a)(1), (4), (5), (7), 2002(b) and 2002(f) and Local Rules 4001-1 and 9013-1) shall be served only upon counsel for the debtor, the United States Trustee, counsel for all official committees, all parties who file a request for services of notices under Fed. R. Bank. P. 2002(1) and all parties whose rights are affected by the motion…

20. Under Local Rule 2002-1(b), if the Sale Motion was filed while these cases were pending in Chapter 11, the Debtors would not need to seek to limit notice. However, in the Chapter 7 case the Trustee is required by the Federal Rules of Bankruptcy Procedure to serve all of the Debtors' creditors, including all of their unsecured creditors. The Trustee respectfully requests that notice of the Sale Motion be limited to the following parties: (a) the United States Trustee; (b) counsel to the administrative agents for the Debtors' prepetition secured lenders; (c) counsel to the Debtors' postpetition lenders; (d) counsel for the Junior DIP Lenders; (e) counsel for the Senior Indenture Trustee; (f) counsel for the Junior Indenture Trustee; (g) counsel for the Revolving Credit Agent and Senior Post-Petition Agent; (h) counsel to the Debtors; (i) creditors holding the twenty (20) largest unsecured claims against the each of the Debtors as included in

the Debtors' Chapter 11 Schedules or their legal counsel, if known; (j) unsecured creditors with a scheduled claim in excess of $25,000 as identified in the Selling Debtor's Schedules; (k) any known secured creditors as listed in Schedule D of the Debtors' Chapter 11 Schedules; (l) parties as listed in Schedule G of the Debtors' Chapter 11 Schedules; (m) all persons or entities known or reasonably believed to have asserted a Lien in any of the Purchased Assets; (n) the United States Department of Justice; (o) counsel to the Purchaser; (p) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Purchased Assets; (q) the Attorney General for the State of South Carolina; (r) the United States Environmental Protection Agency; (s) South Carolina Environmental Regulator; (t) Internal Revenue Service; (u) South Carolina Department of Revenue; (v) South Carolina Dept. of Labor, Licensing and Regulation; (w) Horry County Treasurer's Office; (x) Horry County Property Assessor; (y) City of Myrtle Beach, Administration; (z) any party who has requested notice and service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Service Parties").

21.    The Trustee believes that service of the Sale Motion on the Service Parties strikes an appropriate balance between ensuring that all parties reasonably interested in the outcome of the Sale Motion will have notice thereof and a full opportunity to respond thereto and causing the estates to incur significant costs which will reduce the likelihood of any distribution to the Debtors' unsecured creditors.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order, a copy of which is attached hereto: (i) shortening notice of the Sale Motion (ii) scheduling a hearing on the Sale Motion for February 17, 2009 at 10:00 a.m., and (iii) permitting any party objecting to the relief sought by the Sale Motion, including any interested purchasers, to object at any time up

until and through the time of the hearing to consider the Sale Motion, and (iv) limiting notice of the Sale Motion to the Service Parties.

Dated: February 10, 2009

COZEN O'CONNOR

By: /s/ John T. Carroll, III
John T. Carroll, III (DE No. 4060)
Jeffrey R. Waxman (DE No. 4159)
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
(302) 295-2028
(302) 295-2013 Fax No.

Counsel to Alfred T. Giuliano
Chapter 7 Trustee