# EXHIBIT A

## FORM OF BILL OF SALE

NEWYORK 7017364 (2K)

## BILL OF SALE AND INSTRUMENT OF ASSIGNMENT OF ASSETS AND ASSUMPTION OF LIABILITIES

BILL OF SALE AND INSTRUMENT OF ASSIGNMENT OF ASSETS AND ASSUMPTION OF LIABILITIES, dated as of February __, 2009 (this "Bill of Sale and Instrument of Assignment and Assumption"), from Alfred Guiliano, in his capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of HRP Myrtle Beach Operations, LLC, a limited liability company organized under the laws of the State of Delaware (the "Bankruptcy Estate"), to FPI MB Entertainment LLC, a limited liability company organized under the laws of the State of Delaware (the "Purchaser");

WHEREAS, the Trustee is the Chapter 7 Trustee for the Bankruptcy Estate;

WHEREAS, the Trustee and the Purchaser have entered into an Asset Purchase Agreement, dated as of February 9, 2009 (the "Asset Purchase Agreement"; unless otherwise defined herein, capitalized terms shall be used herein as defined in the Asset Purchase Agreement), pursuant to which the Trustee has agreed to sell, assign and transfer to the Purchaser, and the Purchaser has agreed to purchase and acquire from the Trustee on behalf of the Bankruptcy Estate, the Purchased Assets and the Purchaser has agreed to assume the Assumed Liabilities;

WHEREAS, the execution and delivery of this Bill of Sale and Instrument of Assignment and Assumption by the Trustee and the Purchaser is required by Sections 3.3(a) and 3.4(c) of the Asset Purchase Agreement;

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Asset Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Trustee and the Purchaser does hereby agree as follows:

1.    Sale and Assignment of Assets and Properties.  On the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Trustee hereby sells, assigns, transfers, conveys and delivers unto the Purchaser and its successors and assigns, forever, the entire right, title and interest of the Bankruptcy Estate free and clear of all Encumbrances (except Permitted Encumbrances) in and to the Purchased Assets.

2.    Assumption of Assumed Liabilities.  On the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Purchaser hereby assumes, and agrees to timely pay, perform and discharge in accordance with their terms, the Assumed Liabilities.

3.    Further Action.  The Trustee shall, at the request of the Purchaser, use commercially reasonable efforts to timely execute and deliver any additional documents and perform such additional acts that may be necessary, proper and advisable under applicable Law to grant, sell, convey, assign, transfer, set over to or vest in the Purchaser any of the Purchased Assets.

4.      No Third Party Beneficiaries. This Bill of Sale and Instrument of Assignment and Assumption shall be binding upon and inure solely to the benefit of the parties to the Asset Purchase Agreement and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person, any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Bill of Sale and Instrument of Assignment and Assumption.

5.      Interpretation. The respective rights of the Trustee and the Bankruptcy Estate, on the one hand, and the Purchaser, on the other, with respect to the Purchased Assets sold, transferred, assigned and conveyed hereby and the assumption of the Assumed Liabilities hereunder shall be governed exclusively by the Asset Purchase Agreement, and nothing in this Bill of Sale and Instrument of Assignment and Assumption shall alter any liability or obligations arising under the Asset Purchase Agreement, which shall (without limiting the generality of the foregoing) govern, and shall contain the sole and exclusive representations, warranties and obligations of the parties with respect to the rights and obligations sold, transferred, assigned, conveyed and assumed hereunder. If there is any conflict or inconsistency between the provisions of the Asset Purchase Agreement and this Bill of Sale and Instrument of Assignment and Assumption, the provisions of the Asset Purchase Agreement shall govern.

6.      Governing Law. This Bill of Sale and Instrument of Assignment and Assumption shall be governed by the Laws of the State of New York, and to the extent applicable, the Bankruptcy Code.

7.      Counterparts. This Bill of Sale and Instrument of Assignment and Assumption may be executed and delivered (including by facsimile transmission) in counterparts, and by the different parties hereto in separate counterparts, each of when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

2

IN WITNESS WHEREOF, this Bill of Sale and Instrument of Assignment and Assumption has been duly executed as of the date first above written.

THE TRUSTEE

ALFRED GUILIANO

_____

Alfred Guiliano, Trustee

FPI MB ENTERTAINMENT LLC

By: _____

      Name:

      Title:

3

**EXHIBIT B**

**FORM OF SALE ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| HRP Myrtle Beach Holdings, LLC *et al.,*[1] | : Case No. 08-12193 (KJC) |
| | : |
| Debtors | : Jointly Administered |
| | : |
| | : **Related Doc. No.** _____ |
| | : |

## ORDER (I) AUTHORIZING SALE OF HARD ROCK PARK FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN DESIGNATED CONTRACTS AND UNEXPIRED LEASES

This matter is before the Court on the motion[1] (the "Sale Motion") [Docket No. ___],

dated February 9, 2009, of Alfred Giuliano, as Chapter 7 Trustee (the "Trustee") on behalf of the

bankruptcy estate of HRP Myrtle Beach Operations, LLC (the "Selling Debtor," and together

with the other, related debtors, the "Debtors"), and for entry of an order, pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and

9014 approving the asset purchase agreement, a copy of which was attached as Exhibit A to the

Sale Motion, (the "Asset Purchase Agreement") by and among the Trustee and FPI MB

Entertainment LLC (the "Purchaser"), and such other agreements to be entered into and among

the parties as contemplated therein, and authorizing the sale of the Purchased Assets to the

---

[1]     The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC (1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877). The address of each of the Debtors is 211 George Bishop Parkway, Myrtle Beach, South Carolina 29579.

Purchaser (the "Sale") free and clear of all liens, claims, encumbrances, and other interests (all

such liens, claims, encumbrances and other interests shall be referred to collectively as the

"Liens") other than any Permitted Liens and Assumed Liabilities; and the Court having heard

statements of counsel and the evidence presented in support of the relief requested by the Trustee

in the Sale Motion at a hearing before the Court on February 17, 2009 (the "Sale Hearing"); and

it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal

and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the

relief granted herein; and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

---

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Asset Purchase Agreement (as defined herein) and the Sale Motion, as applicable.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The statutory predicates for the relief requested in the Sale Motion are sections

105(a), 363(b), (f), and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2),

6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014.

### Notice of the Sale Hearing

D.    Actual written notice of the Sale Hearing, the Sale Motion, the Sale and a

reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein has been afforded to all interested persons and entities, including, but not

limited to (a) the United States Trustee; (b) counsel to the administrative agents for the Debtors'

prepetition secured lenders; (c) counsel to the Debtors' postpetition lenders; (d) counsel for the

Junior DIP Lenders; (e) counsel for the Senior Indenture Trustee; (f) counsel for the Junior

Indenture Trustee; (g) counsel for the Revolving Credit Agent and Senior Post-Petition Agent;

(h) counsel to the Debtors; (i) creditors holding the twenty (20) largest unsecured claims against

the each of the Debtors as included in the Debtors' Chapter 11 Schedules or their legal counsel,

if known; (j) unsecured creditors with a scheduled claim in excess of $25,000 as identified in the

Selling Debtor's Schedules; (k) any known secured creditors as listed in Schedule D of the

Debtors' Chapter 11 Schedules; (l) parties as listed in Schedule G of the Debtors' Chapter 11

Schedules; (m) all persons or entities known or reasonably believed to have asserted a Lien in

any of the Purchased Assets; (n) the United States Department of Justice; (o) counsel to the

Purchaser; (p) all persons or entities known or reasonably believed to have expressed an interest

in acquiring the Purchased Assets; (q) the Attorney General for the State of South Carolina; (r)

the United States Environmental Protection Agency; (s) South Carolina Environmental

Regulator; (t) Internal Revenue Service; (u) South Carolina Department of Revenue; (v) South

Carolina Dept. of Labor, Licensing and Regulation; (w) Horry County Treasurer's Office; (x)

Horry County Property Assessor; (y) City of Myrtle Beach, Administration; (z) any party who has requested notice and service of papers pursuant to Bankruptcy Rule 2002.

E.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The foregoing notice described in paragraph D was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing or the Sale is required.

F.    The disclosures made by the Trustee concerning the Asset Purchase Agreement, the Sale and the Sale Hearing were good, complete and adequate.

### Good Faith of Purchaser

G.    The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

H.    Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser agreed to subject its bid to competitive bidding procedures at the Sale Hearing; (c) Purchaser in no way induced or caused the bankruptcy filing by the Debtors; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of controlling stockholders

exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Asset

Purchase Agreement and any other agreements or instruments related thereto was at arms' length

and in good faith.

## Highest and Best Offer

I.      The Purchased Assets have been extensively marketed by the Trustee and, before

that, by the Debtors and their professionals, as evidenced by, among other things, the Debtors'

Motion to Approve an Order (I)(A) Approving Procedures in Connection With the Sale of the

Debtors' Assets; (B) Scheduling the Related Auction to Consider Approval of Sale; (C)

Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired

Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related

Relief; and (II)(A) Authorizing the Sale of Such Assets Pursuant to the Modified Purchase

Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving

the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related

Thereto; and (C) Granting Related Relief (the "Chapter 11 Sale Motion") pursuant to which the

Debtors sought approval of certain procedures in connection with a proposed sale of the Debtors'

assets. Notwithstanding, their efforts, the Debtors were unable to generate any "qualifying

offers," as that term is defined in the Chapter 11 Sale Motion and the Order approving the

Chapter 11 Sale Motion, for the sale of the Selling Debtor's assets.

J.      The Trustee offered the Purchased Assets for sale to any party that would pay the

highest and best price for the Purchased Assets. The sales process afforded a full, fair and

reasonable opportunity for any person or entity to make a higher or otherwise better offer to

purchase the Purchased Assets. The sales process was conducted in a noncollusive, fair and

good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

K.    The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Selling Debtor's estate than would be provided by any other available alternative. The Trustee's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

L.    The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 7 case. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Selling Debtor's estate than the Purchaser as set forth in the Asset Purchase Agreement

M.    Approval of the Sale Motion and the Asset Purchase Agreement, and the consummation of the transactions contemplated therein, is in the best interests of the Selling Debtor, its creditors, the estate and other parties in interest.

### No Fraudulent Transfer

N.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

O.    The Purchaser is not a mere continuation of the Selling Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Selling Debtor. The Purchaser is not holding itself out to the public as a continuation of the Selling Debtor. The Purchaser is not a successor to the Selling Debtor or its estate and the Sale does not amount to a

consolidation, merger or de facto merger of Purchaser and the Selling Debtor. The transactions

contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in

order to escape liability for the Selling Debtor's debts.

## Validity of Transfers and Sale

P.      The Trustee has full power and authority to execute and deliver the Asset

Purchase Agreement and all other documents contemplated thereby, and no further consents or

approvals are required for the Trustee to consummate the transactions contemplated by the Asset

Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

Q.      The transfer of each of the Purchased Assets to the Purchaser will be as of the

Closing Date a legal, valid, and effective transfer, and vests or will vest the Purchaser with all

right, title, and interest of the Trustee and the Selling Debtor to the Purchased Interests free and

clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for

any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.

## Section 363(f) Is Satisfied

R.      The Purchaser would not have entered into the Asset Purchase Agreement and

would not consummate the transactions contemplated thereby if the sale of the Purchased Assets

to the Purchaser were not, except as otherwise provided in the Asset Purchase Agreement with

respect to the Assumed Liabilities and Permitted Liens, free and clear of all Liens of any kind or

nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent

expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and

the Permitted Liens), be liable for any of such Liens, including, but not limited to, Liens in

respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security

interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements,

practices and programs, including, without limitation, any pension plan of any of the Debtors; (4)

any other employee, worker's compensation, occupational disease or unemployment or

temporary disability related claim, including, without limitation, claims that might otherwise

arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as

amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the

Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker

Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967

and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities

Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state

discrimination laws, (k) state unemployment compensation laws or any other similar state laws,

or (1) any other state or federal benefits or claims relating to any employment with any of the

Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as

amended; and (7) any theories of successor liability.

      S.     The Trustee may sell the Purchased Assets to Purchaser free and clear of all Liens

against the Trustee, the Selling Debtor, its estate or any of the Purchased Assets (except for any

Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement) because, in each

case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has

been satisfied. With respect to any and all entities asserting a Lien, including, without limitation,

any options, pledges, security interests, claims, equities, reservations, third party rights, voting

trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to

transfer or assignment of any kind (including, without limitation to the generality of the

foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses,

permits registrations and authorizations or approvals of or with respect to governmental units and

instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Lien, with such Lien to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the assets free and clear of such Lien, (iii) such Lien is in *bona fide* dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

T.      Those holders of Liens against the Selling Debtor, its estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens, if any, in each instance against the Selling Debtor, its estate, any of the Purchased Assets, except as otherwise specifically provided by the Asset Purchase Agreement or this Order attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Selling Debtor and its estate may possess with respect thereto.

### Compelling Circumstances for an Immediate Sale

U.      To maximize the value of the Purchased Assets and to preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased

Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

V.    Given all of the circumstances of this chapter 7 case and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

W.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED
AND DECREED THAT:

### General Provisions

1.    The relief requested in the Sale Motion is granted and approved and the Sale contemplated thereby is approved as set forth in this Order.

2.    All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

### Approval of the Asset Purchase Agreement

3.    The Asset Purchase Agreement and all ancillary or related documents, agreements or instruments and all of the terms and conditions thereof are hereby approved.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Trustee, the Selling Debtor and its estate, all creditors of, and holders of equity interests in, the Selling Debtor (whether known or unknown), any holders of Liens against or on all or any portion of the Purchased Assets, the Purchaser and all successors and assigns of the Purchaser and the Purchased Assets. This Order shall inure to the benefit of the Trustee, the Selling Debtor, its estate, its creditor, the Purchaser and their respective successors and assigns. The Asset Purchase Agreement shall not be subject to rejection.

### Transfers of the Purchased Assets

6.      Pursuant to sections 105(a), 363(b), 363(f), 365(a) and 365(f)(1) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Trustee's receipt of the Purchase Price, shall be free and clear of all Liens

except any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Permitted Liens and Assumed Liabilities. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be free and clear of (a) any and all Liens, including, without limitation, all Liens listed on Exhibit A hereto, except for Permitted Liens, and (b) all interests, liabilities, obligations or claims, including, without limitation, all "claims" within the meaning of section 101(5) of the Bankruptcy Code and any claims pursuant to any successor or successor-in-interest liability, control group liability or consolidated group liability theory. Except as otherwise specifically provided by the Asset Purchase Agreement or this Order, all Liens shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they will have as against the Purchased Assets, subject to any claims and defenses the Trustee, the Selling Debtor and its estate may possess with respect thereto.

      7.      Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities holding Liens or interests in all or any portion of the Purchased Assets (other than Permitted Liens and the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Selling Debtor, the Purchased Assets, the operation of the Selling Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property, the Purchased Assets, such persons' or entities' Liens or interests in and to the Purchased Assets. On and after the Closing Date, the Trustee, the Purchaser and each such creditor is authorized to execute such documents and take all other actions as may be necessary to release Liens (except Permitted

Liens) on the Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

8.      The Purchaser and, as the case may be, the Trustee, are authorized to remit payment directly to third parties in accordance with Section 6.2 of the Asset Purchase Agreement, and any agreement between the Trustee and the Senior Revolving Lenders in respect of administrative claims, pursuant to wire transfer or other payment instructions to be provided to them.  Without limiting the foregoing, any payments to be made by or due from the Trustee to the Purchaser or a third party in accordance with the terms of the Asset Purchase Agreement shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

9.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser, in accordance with the terms of the Asset Purchase Agreement and this Order.

10.      All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

11.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any appropriate in order to cancel any of the Liens and other encumbrances of record except the Permitted Liens.

12.      If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee, prior to the Closing, in proper form for filing and executed by

the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

easements, and any other documents necessary for the purpose of documenting the release of all

Liens or interests which the person or entity has or may assert with respect to all or any portion

of the Purchased Assets, the Trustee and the Purchaser are hereby authorized, to execute and file

such statements, instruments, releases and other documents on behalf of such person or entity

with respect to the Purchased Assets.

13.    This Order is and shall be binding upon and govern the acts of all persons and

entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing persons and entities is hereby directed to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Asset Purchase Agreement.

14.    The proceeds from the sale of the Purchased Assets, less any normal and

customary costs of closing including real estate taxes (excluding amounts paid by the Purchaser

in accordance with the terms of the Asset Purchase Agreement), and net of an amount equal to

(A) the amount of $1,273,250 for the benefit and use of the Selling Debtor, (B) the fees and

expenses of Raymond James with respect to its role in the sale process, and (C) administrative

expenses in an amount and subject to terms and documentation to be separately agreed between

the Trustee and the Senior Revolving Lenders, shall be used first to pay (and shall be paid

directly to) the Senior Revolving Lenders until their claims are paid in full, including, without limitation, claims for any and all principal, unpaid hedging obligations, interest, attorneys' fees and expenses and advances made during the Chapter 7 Case, in each case, to the fullest extent provided under the Pre-Petition Loan Documents. Any remaining proceeds from the sale of the Purchased Assets (after the claims of the Senior Revolving Lenders have been paid in full) shall be delivered to the Trustee for distribution among the creditors of the Bankruptcy Estate in accordance with the order of priority applicable to their claims;

## Other Provisions

15.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien (other than a Permitted Lien) or interest arising under, out of, in connection with or in any way relating to the Selling Debtor, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) any claim of successor liability or similar theory or doctrine, including with respect to both (a) and (b), without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the

Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with, on or in relation to the Purchased Assets.

16.     Except for the Permitted Liens and the Assumed Liabilities or as otherwise expressly provided for in this Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Trustee, the Selling Debtor or the estate arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, the Selling Debtor or any of its or their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, the Selling Debtor or the estate or any obligations of the Trustee, the Selling Debtor or the estate arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of, or businesses operated with, on or in relation to, any of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Liens and other claimants. The consideration given by the Purchaser

shall constitute valid and valuable consideration for the releases of any potential claims of

successor liability of the Purchaser, which releases shall be deemed to have been given in favor

of the Purchaser by all holders of Liens and claims against or interests in the Selling Debtor or

the Purchased Assets.

17.     The transactions contemplated by the Asset Purchase Agreement are undertaken

by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of

the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Sale shall not affect the validity of the Sale

unless such authorization and the Sale is duly stayed pending such appeal. The Purchaser is a

good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is

entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.     Nothing contained in any order of any type or kind entered in (i) this chapter 7

case or any related proceeding subsequent to entry of this Order, shall conflict with, derogate

from, or affect in any manner, the provisions of the Asset Purchase Agreement or the terms of

this Order.

19.     Nothing in this Order or the Asset Purchase Agreement approves or provides for

the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy

Code or otherwise) of the Debtors' estates.

20.     Nothing in this Order or the Asset Purchase Agreement approves or provides for

the transfer to Purchaser any coverage, rights or benefits under the liability insurance policies of

the Selling Debtor with respect to claims arising out of or relating to any occurrence or event that

happened prior to Closing, notwithstanding the transfer to the Purchaser, to the extent assignable

or transferable in accordance with the terms and conditions of the applicable insurance policies

or applicable Law, all of the Company's insurance policies and rights and benefits related to the

Purchased Assets or Assumed Liabilities.

21.     No bulk sales law or any similar law of any state or other jurisdiction applies in

any way to the Sale.

22.     The failure specifically to include any particular provision of the Asset Purchase

Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Asset Purchase Agreement be authorized and approved in its

entirety.

23.     The Asset Purchase Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court, provided that any such modification,

amendment or supplement does not have a material adverse effect on the Debtor's estate.

24.     The Court shall retain jurisdiction to, among other things, interpret, implement,

and enforce the terms and provisions of this Order, the Asset Purchase Agreement, all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith to which the Trustee is a party or which has been assigned by

the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or

relating in any way to the Sale.

25.     In the event the Asset Purchase Agreement is validly terminated in accordance

with its terms (or if a sale is delayed so that the Purchase Price is reduced below $22 million), the

Trustee is hereby authorized to sell and convey (on a date to be agreed) the Purchased Assets to

the Senior Revolving Lenders (or their designee) on a full credit bid basis pursuant to Section

363(k) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, and

otherwise subject to all of the terms and conditions (to the extent applicable or relevant), and all

Purchaser's protections and benefits, as set forth herein and in the Asset Purchase Agreement

and related documents.

26.    The procedures for the assumption and assignment of certain executory contracts

and unexpired leases designed by Purchaser are approved as follows:

(a)    On or before February 27, 2009, the Purchaser shall advise the Trustee which, if any, of the designated executory contracts and unexpired leases the Purchaser desires to have assigned to it.

(b)    No later than February 28, 2009, the Trustee shall promptly file a motion seeking to assume and assign the designated executory contracts and unexpired leases to Purchaser (the "Assumption and Assignment Motion"), and the Trustee shall serve a copy of the Assumption and Assignment Motion upon all nondebtor parties to all executory contracts and unexpired leases designated by the Purchaser for assumption and assignment to the Purchaser.    The Trustee shall include with the service of the Assumption and Assignment Motion, a copy of financial documents evidencing the Purchaser's financial credibility, willingness and ability of the Purchaser to perform under the designated executory contracts and unexpired leases.

(c)    All nondebtor parties to any executory contracts and unexpired leases designated to be assumed and assigned to the Purchaser by and through the Assumption and Assignment Motion shall have until March __, 2009 at _____ _.m. to file an objection to the proposed assumption and assignment of any executory contracts and unexpired leases to which it is a party.

(d)    The Bankruptcy Court shall consider the Assumption and Assignment Motion at a hearing on March 6, 2009 at _____ _.m., and any objections thereto.    At the hearing to consider the Assumption and Assignment Motion, the Trustee will present evidence to prove the Purchaser's financial credibility, willingness and ability to perform under the designated executory contracts and unexpired leases, and the Court and other interested parties therefore will have the opportunity to evaluate the Purchaser's ability to provide adequate assurance of future performance under the contracts or leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

(e)    Any objection to the cure amount or adequate assurance of future performance that is not timely filed shall be deemed waived.

27.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.    The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Sale Motion or otherwise waived.

29.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

30.    To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement, the terms of this Order shall control.

31.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern.

DATE: February __, 2009

SO ORDERED:

_____
HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

1.    Horry County real property and personal taxes and Rural Fire District and Stormwater

Assessments for 2008 and prior years, now due and payable, plus penalties and interest,

including, without limitation, as follows:

| | | | |
|---|---|---|---|
| 172-00-05-015 | Receipt No. 2008-099283 | $ | 154,010.11 |
| 172-00-05-256 | Receipt No. 2008-099284 | $ | 8,412.14 |
| 172-00-05-269 | Receipt No. 2008-099285 | $ | 735.61 |
| 172-00-05-192 | Receipt No. 2006-293124A | $ | 54.94 |
| 172-00-05-194 | Receipt No. 2006-293125A | $ | 5,505.17 |
| 172-00-05-195 | Receipt No. 2006-293126A | $ | 740.64 |

2.    First Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach

Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as administrative

agent and collateral agent on behalf of the Secured Parties, dated March 30, 2006, recorded on

March 30, 2006, in Mortgage Book 4470 at page 375, records of Horry County, and Partial

Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 2,

2006, in Mortgage Book 4601 at page 1400, records of Horry County.

3.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 402,

records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and

Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving Lenders;

amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1406, and

amendment filed on July 3, 2006, in Mortgage Book 4601 at page 1408; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2680, and termination of Mortgage Book

4601 at page 1406 in Mortgage Book 5001 at page 2663, records of Horry County.

4.    Senior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach
Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated
March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 406, and Partial
Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3,
2006, in Mortgage Book 4601 at page 1410, records of Horry County.

5.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 433,
records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and
Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Senior Secured
Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1415,
and amendment filed on July 3, 2006 in Mortgage Book 4601 at page 1417; terminated on
December 3, 2007, in Mortgage Book 5001 at page 2681, and termination of Mortgage Book
4601 at page 1415 in Mortgage Book 5001 at page 2684, records of Horry County.

6.    Junior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach
Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated
March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 437, and Partial
Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3,
2006, in Mortgage Book 4601 at page 1419, records of Horry County.

7.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 464,
records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and
Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Junior Secured
Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1425,
and amendment filed July 3, 2006 in Mortgage Book 4601 at page 1427; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2682, and termination of Mortgage Book 4601 at page 1425 in Mortgage Book 5001 at page 2685, records of Horry County.

8.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2665, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving Lenders.

9.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2670, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Senior Secured Noteholders.

10.     UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page 2675, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Junior Secured Noteholders.

11.     Notice of Project Commencement given by Sturzenbecker Construction Co., Inc. filed on May 15, 2007, in Lien Book 150 at page 1651, records of Horry County.

12.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on July 13, 2007, in Lien Book 151 at page 2290, records of Horry County.

13.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on September 17, 2007, in Lien Book 153 at page 311, records of Horry County.

14.     Notice of Mechanic's Lien and Statement of Account in the amount of $324,028.92, Jerry's Plumbing, LLC, Petitioner vs. HRP Myrtle Beach Operations, LLC and Hensel Phelps Construction Co., Respondents, filed on June 18, 2008, in Lien Book 160 at page 2375, records

of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on July 22,

2008, in Lien Book 163 at page 750, records of Horry County. Notice of Lis Pendens filed on

July 10, 2008 as 2008-CP-26-1995, records of Horry County Clerk of Court and was cancelled

on July 22, 2008.

15.     Statement and Notice of Mechanic's Lien in the amount of $12,249.00 from Otis Elevator

company to Hensel Phelps Construction Co., filed on July 11, 2008, in Lien Book 163 at page

75, records of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on

July 22, 2008, in Lien Book 163 at page 744, records of Horry County.

16.     Notice and Certificate of Mechanic's Lien in the amount of $101,141.30, Neuman Pools,

Inc. Plaintiff vs. HRP Myrtle Beach Operations, LLC, d/b/a Hard Rock Park, Hensel Phelps

Construction Co. and Deutsche Bank Trust Company Americas, filed on July 15, 2008, in Lien

Book 163 at page 236, records of Horry County. Said lien was cancelled by Notice of 17.

        Cancellation of Mechanic's Lien filed on July 17, 2008, in Lien Book 163 at page 315,

records of Horry County.

18.     Notice and Certificate of Mechanic's Lien in the amount of $329,308.00, SCS Interactive,

Inc., Claimant vs. HRP Myrtle Beach Operations, LLC, Owner, filed on August 4, 2008, in Lien

Book 163 at page 1904, records of Horry County.

19.     Claim of Lien in the amount of $5,964.92, Hertz Equipment Rental Corp., Claimant and

HRP Myrtle Beach Operations, LLC, Owner, Hensel Phelps Construction Company, Contractor,

filed on August 5, 2008, in Lien Book 163 at page 2051, records of Horry County. Said lien was

cancelled by Satisfaction of Lien filed on August 22, 2008, in Lien Book 164 at page 399,

records of Horry County.

20.     Notice of claim of Mechanic's Lien and Statement of Account in the amount of

$964,609.10, Premier Rides, Inc., Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant,

filed on August 13, 2008, in Lien Book 163 at page 2989, records of Horry County.  Affidavit of

Service filed on August 18, 2008, in Lien Book 163 at page 3328, records of Horry County.

21.     Amended Notice of Claim of Mechanic's Lien and State of Account filed on September

23, 2008, in Lien Book 164 at page 3011, records of Horry County.  Affidavit of Service filed on

October 1, 2008, in Lien Book 165 at page 1842.  Second Amended Notice of Claim of

Mechanic's Lien and Statement of Account filed on October 8, 2008, in Lien Book 165 at page

2727, increases the lien amount to $1,466,676.90, which amendment was re-recorded October

17, 2008, Lien Book 166 at page 387, records of Horry County.  Affidavit of Service filed

October 17, 2008 in Lien Book 166 at page 378.

22.     Notice of Mechanic's Lien in the amount of $3,625.00, Grand Strand Fire Sprinklers of

SC, Inc., Petitioner, vs. HRP Myrtle Beach Operations, LLC, Respondent, filed on September 4,

2008, in Lien Book 164 at page 1614, records of Horry County.

23.     Notice of Mechanic's Lien and Statement of Account in the amount of $372,256.14,

Morris Architects, Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant, filed on

September 30, 2008, in Lien Book 165 at page 1630, records of Horry County.

24.     Complaint filed on February 20, 2008, in Civil Action 2008-CP-26-1423, entitled Marsha

A. Widmer, Plaintiff vs. HRP Myrtle Beach Operations, LLC d/b/a Hard Rock Park, records of

Horry County Clerk of Court.

25.     Notice and Certificate of Mechanic's Lien in the amount of $25,577.15, on behalf of

GEM Industries, Inc. against HRP Myrtle Beach Operations, LLC, filed on October 23, 2008, in

Lien Book 166 at page 1200, records of Horry County.

26.     Claim of Lien filed by Hertz Equipment Rental Corp. #9316 against HRP Global

Management, LLC for HRP Myrtle Beach Operations, LLC, in the amount of $23,579.95, filed

on November 13, 2008, in Lien Book 166 at page 2752, records of Horry County.

27.     Printout from Grand Strand Water & Sewer Authority computer showing reactivation

charge of $2,520.00.

28.     The rights of any party to possession of the Premises.

29.     Any assessments, water rents and/or charges, sewer rents and/or charges, sewer hook-up

charges, fire service, gas charges, common charges (i.e. condominium or association charges or

dues) and other municipal charges that would constitute a lien and be currently due and payable.

30.     Unfiled mechanic's liens and/or materialmen's liens for which the statutory period for

filing has not expired.

# EXHIBIT C

## FORM OF ESCROW AGREEMENT

## EXHIBIT C

### ESCROW AGREEMENT

THIS EARNEST MONEY ESCROW AGREEMENT (the "Agreement") is made and entered into this __ day of February, 2009, by and among Alfred Giuliano, in his capacity as the Chapter 7 Trustee appointed in the Chapter 7 Case (the "Trustee") on behalf of the bankruptcy estate of HRP Myrtle Beach Operations, LLC, a Delaware limited liability company and FPI MB Entertainment LLC, a Delaware limited liability company (the "Purchaser"), and Cozen O'Connor ("Escrow Agent").

WHEREAS, Trustee and Purchaser have entered into that certain Asset Purchase Agreement (the "Sale Agreement") dated effective as of the date hereof, for the sale and purchase of a Purchased Assets related to the real property commonly known as Hard Rock Park located in Myrtle Beach, South Carolina; and

WHEREAS, a copy of the Sale Agreement has been provided to Escrow Agent and all terms used but not defined herein shall have the meanings given to such terms in the Sale Agreement; and

WHEREAS, Purchaser and Trustee desire to have Escrow Agent hold the Deposit in escrow, as required by the Sale Agreement, pursuant to the terms hereof.

NOW, THEREFORE, in consideration of the Owned Real Property and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

1.    Purchaser and Trustee appoint Cozen O'Connor as Escrow Agent hereunder.

2.    Purchaser has delivered and deposited with Escrow Agent the deposit described in Section 3.1 of the Sale Agreement. The Escrow Agent agrees to hold the Deposit (as defined in the Sale Agreement), in trust, in accordance with the terms of the Sale Agreement.

3.    Upon the Closing Date and completion of the funding of the Closing in accordance with the Sale Agreement, Escrow Agent shall transfer the Deposit to the Trustee.

4.    Upon (i) receipt by Escrow Agent of written notice and certification ("Disbursing Notice") from either of Trustee or Purchaser (the party sending the Disbursing Notice being hereinafter referred to as the "Notifying Party" and the other of either Trustee or Purchaser, as the case may be, being hereinafter referred to as the "Non-Notifying Party") to Escrow Agent (and with a copy of such Disbursing Notice to be directed and delivered by Escrow Agent to the Non-Notifying Party upon receipt of the Disbursing Notice in accordance with the notice provisions of this Agreement), that there exist certain conditions or facts which under the Sale Agreement entitle the

Notifying Party to receipt of the Deposit from Escrow Agent; and (ii) a failure by Escrow Agent to receive within ten (10) days after Escrow Agent's delivery of the Disbursing Notice to the Non-Notifying Party (or two (2) days in the event Purchaser cancels the Agreement during the due diligence investigation period as set forth in Paragraph 3.5(e) of the Sale Agreement, a written notice and certification ("Contradictory Notice") from the Non-Notifying Party to Escrow Agent (and with a copy of such Contradictory Notice to be directed and delivered by the Non-Notifying Party to the Notifying Party in accordance with the notice provisions of this Agreement) objecting to the Disbursing Notice and stating the reasons for such objection, then Escrow Agent shall deliver the Deposit to the Notifying Party in accordance with the Disbursing Notice. In the event Escrow Agent receives a Contradictory Notice from the Non-Notifying Party or in the event Escrow Agent is uncertain as to its responsibilities hereunder, then Escrow Agent may, at Escrow Agent's option and in its sole discretion, either (a) hold the Deposit for disbursement upon receipt of joint instructions of Trustee and Purchaser or upon receipt of a final, nonappealable order of a court of competent jurisdiction located in Horry County, South Carolina, directing disbursement of the Deposit or (b) tender the Deposit into the registry or custody of any court of competent jurisdiction located in Horry County, South Carolina, together with such legal pleadings as Escrow Agent deems appropriate, and thereupon be discharged from all liability hereunder and under the Sale Agreement. The failure of the Non-Notifying Party to deliver a Contradictory Notice within the ten-day period (or two-day period, as applicable) described above shall be deemed a waiver of the right of the Non-Notifying Party to object to the disbursement by Escrow Agent of the Deposit in accordance with such Disbursing Notice, but shall not waive any rights under the Sale Agreement.

        5.     Purchaser and Trustee hereby covenant and agree that Escrow Agent shall not be liable for any loss, cost or damage which it may incur as a result of serving as Escrow Agent hereunder, except for any loss, cost or damage arising out of Escrow Agent's fraud, bad faith, gross negligence, or willful misconduct. Escrow Agent shall, for example, not incur any liability with respect to (a) any action taken or omitted to be taken in good faith upon advice of its counsel, given with respect to any questions relating to its duties and responsibilities hereunder, or (b) any action taken or omitted to be taken in reliance upon any document, including any written notice of instruction provided for herein, not only as to the due execution and the validity and effectiveness thereof, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine and to have been signed or presented by proper person or persons in conformity with the provisions of this Agreement. Purchaser and Trustee agree to indemnify and hold harmless Escrow Agent against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable costs of investigation and reasonable attorneys' fees and disbursements actually incurred, which may be imposed upon and incurred by Escrow Agent in connection with its serving as Escrow Agent hereunder, except for any loss, cost or damage arising out of Escrow Agent's fraud, bad faith, gross negligence, or willful misconduct. In the event of a dispute between Purchaser and Trustee or in the event Escrow Agent is uncertain as to its responsibilities hereunder, Escrow Agent shall be entitled to tender into the registry or custody of any court of competent jurisdiction located in Horry County, South Carolina, all money or property in Escrow Agent's hands

held under the terms of this Agreement and the Sale Agreement, together with such legal pleadings as it deems appropriate, and thereupon shall be discharged of its obligations hereunder and under the Sale Agreement.

6.      This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

7.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

8.      This Agreement may be executed in separate counterparts which together shall constitute one and the same instrument. This Agreement may also be executed with multiple signature pages, which may be attached to and form one (1) or more counterparts hereof. Facsimile or scanned signatures shall be deemed the equivalent of original signatures.

9.      All notices, consents, approvals and other communications which may be or are required to be given by Trustee, Purchaser or Escrow Agent under this Agreement shall be properly given only if made in writing by (a) personal delivery, or (b) expedited delivery service with proof of delivery, or (c) registered or certified United States Mail, postage prepaid, return receipt requested, or (d) prepaid telegram, telex or facsimile transmission (provided that such telegram, telex or facsimile transmission is also confirmed by expedited delivery service or by mail in the manner previously described), sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of telegram, telex or facsimile transmission, upon receipt. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant hereto shall be as follows:

If to Trustee:

Chapter 7 Trustee on behalf of the Bankruptcy Estate
Giuliano Miller & Company, LLC
Berlin Business Park
140 Bradford Drive
West Berlin, NJ 08091
Facsimile: 856.767.3500
Electronic mail: atgiuliano@giulianomiller.com

With a copy to:

Deutsche Bank Trust Company Americas,
as Agent to the Senior Revolving Lenders
60 Wall Street

New York, NY 10005
Attn: Michael Meagher
Facsimile: 212.797.5695
Electronic mail: Michael.meagher@db.com

With a copy  to:

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Attn: Scott Greissman, Esq.
Facsimile: 212.354.8113
Electronic mail: sgreissman@whitecase.com


Cozen O'Connor
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Attn: John T. Carroll, III
Facsimile: 302.295.2013
Electronic mail: jcarroll@cozen.com


If to Purchaser:

FPI MB Entertainment LLC
307 N. Park Avenue
Winter Park, FL 32789
Attn: Hardin S. Bethea
Facsimile: 646-225-7211
Electronic mail: hbethea@roundboxadvisors.com


With a copy to:

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Attn: Bennett G. Young
Facsimile: 415.951.1180
Electronic mail: byoung@dl.com

And to:

Diamond McCarthy LLP
120 Elm Street, 34th Floor

Dallas Tx 75270
Attn:  Walter (Skip) Scott
Facsimile:  512.617.5299
Electronic mail:  SScott@diamondmccarthy.com

If to Escrow Agent:

Cozen O'Connor
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Attn:  John T. Carroll, III
Facsimile:  302.295.2013
Electronic mail:  jcarroll@cozen.com

[SINGATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this instrument, or a counterpart thereof, to be duly executed as of the day and year first above written.

TRUSTEE:

ALFRED GIULIANO,
as Chapter 7 Trustee on behalf of the
Bankruptcy Estate of HRP Myrtle beach
Operations, LLC

_____

PURCHASER:

FPI MB ENTERTAINMENT LLC

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

ESCROW AGENT:

COZEN O'CONNOR

By:_____
John T. Carroll, III, Member

**SCHEDULES**

**TO**

**ASSET PURCHASE AGREEMENT**

**BY AND BETWEEN**

**FPI MB Entairtainment LLC**

**as Purchaser,**

**and**

**ALFRED GIULIANO,**

**as Chapter 7 Trustee on behalf of the bankruptcy estate of**

**HRP Myrtle Beach Operations, LLC**

**Dated as of February 9, 2009**

All capitalized terms used herein and not otherwise defined will have the respective meanings set forth in the Asset Purchase Agreement, dated as of February 9, 2009, by and between the Purchaser and the Trustee.

**Schedule 1.1(a)**
**Owned Real Property**


**Property Address**:

Hard Rock Park
211 George Bishop Parkway
Myrtle Beach, SC 2957

**Legal Description**:

ALL AND SINGULAR all those certain parcels of land identified as Parcels II-A, II-B, II-C, II-D, II-E, II-F, II-G, II-H, III-A, III-B, III-C, III-D and III-E on that certain plat of survey prepared by Associated Land Surveyors entitled "ALTA/ACSM Survey of Parcels II-A through II-H and Parcels III-A through III-E Fantasy Harbour Area" dated December 2, 2005, as amended February 8, 2006 and March 17, 2006, recorded in the Office of the Register of Deeds for Horry County in Plat Book 212 at Page 213.

LESS AND EXCEPTING THEREFROM, ALL AND SINGULAR all that certain piece, parcel or lot of land shown as Parcel II-A containing 2.71 acres +/- on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 (hereinafter referred to as the "Plat") recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228. NOTE: Said property includes: (i) all of original Parcel II-A, except for that portion combined with Parcel II-H as more fully shown on the Plat and (ii) 23,355 sq. ft. (.54 acres +/-, more or less) from original Parcel III-A as more fully shown on the Plat.

TOGETHER WITH THE FOLLOWING PROPERTY:

Parcel II-H's legal description is hereby amended by adding the following property:

Also included with Parcel II-H is that certain property containing 2,630 sq. ft. (.06 acres +/-, more or less) which was previously a portion of original Parcel II-A which property shall now hereinafter be a part and parcel of Parcel II-H as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

Also included with Parcel II-H is that certain property containing 109 sq. ft. which was previously a portion of Original Parcel III-A which shall now hereinafter be a part and parcel of Parcel II-H as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and

Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

PARCEL III-A'S LEGAL DESCRIPTION IS HEREBY AMENDED BY ADDING THE FOLLOWING PROPERTY:

Also included with Parcel III-A is that certain property containing 2.71 acres +/-, more or less (such property was previously a portion of Tax Parcel 172-00-05-211) which property shall now hereinafter be a part and parcel of Parcel III-A as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

**Schedule 1.1(e)**
**Inventory and Equipment**

1.  Rides located at the Park:

    a.  Slippery When Wet – Coaster (excluding HRP Creative Services Co. LLC license)

    b.  Shake Rattle & Roller Coaster (excluding HRP Creative Services Co. LLC license)

    c.  Reggae River Falls – Play Area (excluding HRP Creative Services Co. LLC license)

    d.  Punk Pit – Bounce House

    e.  Muddin Monster Race – Round Ride (excluding HRP Creative Services Co. LLC license)

    f.  Moody Blues – Dark Ride (excluding the Moody Blues/Nights in White Satin license)

    g.  Eagles Life in the Fast Lane – Coaster  (excluding the Moody Blues/Nights in White Satin license)

    h.  Magic Mushroom – Round Ride

    i.  London Taxi Ride – Ride (excluding HRP Creative Services Co. LLC licens

    j.  Led Zeppelin – Coaster (excluding the Led Zeppelin license)

    k.  Kids Rock State Park – Play Area (excluding HRP Creative Services Co. LLC license)

    l.  Just a-Swingin – Giant Swing (excluding HRP Creative Services Co. LLC license)

    m. Garage Jam – Play Area (excluding HRP Creative Services Co. LLC license)

    n.  Maximum RPM! – Coaster (excluding HRP Creative Services Co. LLC license)

      o.  All the Kings Horses – Carousel (excluding HRP Creative Services Co. LLC license)

2.  All Inventory (e.g., food and beverages, games and merchendise) and Equipment, in each case excluding all or any portions of such Inventory that is not transferable pursuant to any applicable license agreement restrictions.

**Schedule 1.2(m)**
**Excluded Properties and Assets**

None

**Schedule 1.3(d)**
**Assumed Liabilities**

None

**Schedule 1.4(j)**
**Excluded Liabilities**

None

## Schedule 2.1(a)
## Bank Account

**For the Trustee:**

1.  Name and address for Bank:
    JPMorganChase Bank
    4 NY Plaza
    17th Floor
    New York ,NY 10004

    Contact: BMS Customer Service
    Phone (800) 634-5273

2.  JPMorganChase ABA Number:
    021000021    (Domestic Wires)
    JPMorganChase Swift:
    CHASUD33    (Foreign Wires)

3.  Account Number to receive
    incoming funds:
    312-1983055-67

4.  Case Name:
    HRP Myrtle Beach Operations LLC

5.  Case Number:
    08-12195 (KJC)

6.  Trustee:
    Alfred T. Giuliano
    Giuliano Miller & Company, LLC
    Berlin Business Park
    140 Bradford Drive
    West Berlin, New Jersey 08091
    856-596-7000 ext.
    856-767-3500 fax

7.  Amount of funds being wired:
    $

**For the Senior Revolving Lenders:**

1.  Name and address for Bank:
    Deutsche Bank Trust Company
    Americas
    60 Wall Street
    New York, NY 10005

    Bank Routing No.:
    021-001-033

    Account Name:
    DBTCA As Agent for HRP Myrtle
    Beach Partners
    Escrow No. S37342.1

    Account No.:
    01-419-647
    Contact:
    Michael Fradkin
    Phone: (212) 250-2939

# TRUSTEE DISCLOSURE SCHEDULE

## TO

## ASSET PURCHASE AGREEMENT

## BY AND BETWEEN

## FPI MB Entairtainment LLC

## as Purchaser,

## and

## ALFRED GIULIANO,

## as Chapter 7 Trustee on behalf of the bankruptcy estate of

## HRP Myrtle Beach Operations, LLC

### Dated as of February 9, 2009

All capitalized terms used herein and not otherwise defined will have the respective meanings set forth in the Asset Purchase Agreement, dated as of February 9, 2009, by and between the Purchaser and the Trustee.

**Section 4.3**
**Absence of Certain Developments**

None

NEWYORK 7027627 (2K)

**Section 4.4(a)**
**Material Permits**

| GENERAL & PARK-WIDE LICENSES | LICENSING AUTHORITY | NOTES |
|---|---|---|
| **Retail License** (State of SC) | S.C. Dept. Revenue PO Box 125 Columbia, SC 29214 Phone: 803-896-1350 General Fax: 803-898-5822 | License # 026 60427 4 Effective Date: 4/1/2007 No Expiration Industry Type: 713110 (Amusement & Theme Parks) |
| **License to Operate Place of Amusement/Admissions License** (State of SC) | S.C. Dept. Revenue PO Box 125 Columbia, SC 29214 Phone: 803-896-1970 General Fax: 803-898-5822 | License # 812608834 Effective Date: 4/1/2007 No Expiration |
| **Alternate Admissions Letter (Omniticket)** (State of SC) | SC Dept. of Revenue 1452 West Evans St., PO Box 5418 Florence, SC 29502 Phone: 843-661-4850 Perry Mathis (Collection Supervisor) Ext. 113  Archie Boone (Auditor) Ext. 122 | File # 81260883-4  Letter Date: March 14, 2008  Valid unless we change ticketing procedures |
| **Withholding Agent Registration** (State of SC) | S.C. Dept. Revenue PO Box 125 Columbia, SC 29214 Phone: 803-896-1450 General Fax: 803-898-5822 | Withholding Agent #: 25493691 2 Permanent – No Expiration |
| **Horry County Business License** | Horry County Business License Department 211 Beatty St., PO Box 1275 Conway, SC 29528 Phone: 843-915-5620 Fax: 843-915-6220 | License # 109567 Effective Date: 4/30/08 Expires: 4/30/2009 |

| | | |
|---|---|---|
| **Beer/Wine, Liquor, and Sunday-Serve Licenses** (a/k/a PBW, PLB & LOP Licenses) (State of SC) | S.C. Dept. Revenue PO Box 125 Columbia, SC 29214 Phone: 803-896-1970 General Fax: 803-898-5822 | ** See Detailed listing below |
| **Swimming Pool Final Construction Approval** (SCDHEC) | SC Dept of Health & Environmental Control – Region 6 927 Shine Avenue Myrtle Beach, SC 29577 Phone:  843-238-4378 Rayna S. King, Environmental Manager | Slippery When Wet Permit #26-1685E Reggae River Falls Permit #26-1686E Issued 4/10/2008 |
| **Recreational Waters Construction Permit** (SCDHEC) | SC Dept of Health & Environmental Control 2600 Bull Street Columbia, SC 29201 803-898-3432 Jeffrey P. deBessonet, Dir. Water Facilities Permitting Division | Entry Plaza Guitar Spray Pool Permit #26-1773C Issued 8/12/2008 Expires 8/12/2009  Kids Rock State Park Spray Pool Permit #26-1775C Issued 8/12/2008 Expires 8/12/2009 |
| **Restaurant Inspections** (SCDHEC) | S.C. Department of Health & Environmental Control Region 6 Public Health Office 1931 Industrial Park Road Conway, S.C.29526 Phone: (843) 915-8804 Fax: (843) 353-3153 | |
| **Pyro/Fireworks** (U.S.) | US Dept of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Federal Explosives Licensing Center 244 Needy Road Maritinsburg, WV 25405 Chief Christopher R. Reeves Phone: 877-283-3352 Fax:  304-616-4401 | Responsible Person:  Jon Edward Binkowski Date:  4/3/2008 Federal Explosives Permit#: 1-SC-051-34-1E-00160 |
| **Pyro/Fireworks** (S.C. Annual Wholesale | SC Dept of Labor, Licensing & Regulation, | License #96 Issued 7/2/08 |

| | | |
|---|---|---|
| Distribution of Fireworks License) | Board of Pyrotechnic Safety 141 Monticello Trail Columbia, SC 29203 Jerry Wingard, Program Coordinator E-mail wingardj@llr.sc.gov Phone:803-896-9800 Fax: 803-896-9806 | Effective 4/9/08 Expires 7/15/2009 |
| **Pyro/Fireworks** (S.C. Indoor/Proximate Audience Fireworks Display Permit – Malibu, Ice House, Roadies, Lagoon) | SC Dept of Labor, Licensing & Regulation, Division of Fire and Life Safety, Office of State Fire Marshall 141 Monticello Trail Columbia, SC 29203 John G. Reich, Deputy Dir. reichj@llr.state.sc.us Cell: 803-260-5002 Office Phone:803-896-9800 Office Fax: 803-896-9806 | |
| **Pyro/Fireworks** (Horry County Fire Dept. Supervision) | Horry County Fire Rescue 2560 North Main Street Suite 1 Conway, SC 29526 Gary Alderman, Fire Rescue Chief, E-mail: alderman@horrycounty.org Phone: 843-915-5190 Fax: 843-915-6190 | |
| **Security License** (S.C. Business of Proprietary Security License) | South Carolina Law Enforcement Division (SLED) Attn: Regulatory Services PO Box 21398, 44 Broad River Road Columbia, SC 29210 Phone: 803-737-9000 Fax: 803-896-7041 | Certification # 2572 In the Name of: HRP Myrtle Beach Operations, LLC, Felix Angel Mussendon Expires: 1/4/2009 |

| Elevator License (S.C.) | S.C. Department of Labor, Licensing and Regulation Office of Elevators and Amusement Rides 110 Centerview Dr., PO Box 11329 Columbia, SC 29211-1329 Duane Scott, Administrator scottd@llr.sc.gov Phone:  803-896-7630 Fax:  803-896-7650 | Legal doesn't have copies of these licenses |
|---|---|---|
| Amusement Ride Licenses (S.C.) | S.C. Department of Labor, Licensing and Regulation Office of Elevators and Amusement Rides 110 Centerview Dr., PO Box 11329 Columbia, SC 29211-1329 Duane Scott, Administrator scottd@llr.sc.gov Phone:  803-896-7630 Fax:  803-896-7650

SC Dept. of L L & R contracts for inspections through: Comspeq, LLC 500 N Hart Rd Geneva, FL 32732 John Pierce Phone: 407-402-7143 | Legal doesn't have copies of these licenses |

## Detailed Listing of Beer/Wine/Liquor Licenses

1.  SCDOR On Premises Beer/Wine License #32046232-PBW (Valid 9/11/2008 – 5/31/2009)

2. ALICE'S RESTAURANT  SCDOR Business Liquor by the Drink License #32044435-PLB (Valid 5/30/2008 – 5/31/2009)

3. ALICE'S RESTAURANT  SCDOR On Premises Beer/Wine License #32044435-PBW (Valid 5/30/2008 – 5/31/2009)

4. ALICE'S RESTAURANT SCDOR Local Option Permit (Sunday Liquor Sales 12 a.m. - 2 a.m and 10:00 a.m. - 12:00 a.m.) License #32044435-LOP (Valid 6/1/2008 – 5/24/2009)

5. CARNABY STREET CAFÉ SCDOR Business Liquor by the Drink License #32044434-PLB (Valid 5/8/2008 – 5/31/2009)

6. CARNABY STREET CAFÉ SCDOR On Premises Beer/Wine License #32044434-PBW (Valid 5/8/2008 – 5/31/2009)

7. CARNABY STREET CAFÉ SCDOR Local Option Permit (Sunday Liquor Sales 12 a.m. - 2 a.m. and 10:00 a.m. - 12:00 a.m.) License #32044434-LOP (Valid 5/11/2008 – 5/3/2009)

8. GREAT MEALS DINER SCDOR Business Liquor by the Drink License #32044436-PLB (Valid 5/8/2008 – 5/31/2009)

9. GREAT MEALS DINER SCDOR On Premises Beer/Wine License #32044436-PBW (Valid 5/8/2008 – 5/31/2009)

10. GREAT MEALS DINER SCDOR Local Option Permit (Sunday Liquor Sales 12 a.m. - 2 a.m and 10:00 a.m. - 12:00 a.m.) License #32044436-LOP (Valid 5/11/2008 – 5/3/2009)

11. TASTE OF PARADISE GRILL SCDOR Business Liquor by the Drink License #32044433-PLB (Valid 4/17/2008 – 5/31/2009)

12. TASTE OF PARADISE GRILL SCDOR On Premises Beer/Wine License #32044433-PBW (Valid 4/17/2008 – 5/31/2009)

13. TASTE OF PARADISE GRILL SCDOR Local Option Permit (Sunday Liquor Sales 12 a.m. - 2 a.m. and 10:00 a.m. - 12:00 a.m.) License #32044433-LOP (Valid 4/20/2008 – 4/12/2009)

14. WHAMMY BAR SCDOR Business Liquor by the Drink License #32044432-PLB (Valid 4/17/2008 – 5/31/2009)

15.    <u>WHAMMY BAR</u> SCDOR On Premises Beer/Wine License #32044432-PBW (Valid 4/17/2008 – 5/31/2009)

16.    <u>WHAMMY BAR</u> SCDOR Local Option Permit (Sunday Liquor Sales 12 a.m. - 2 a.m and 10:00 a.m. - 12:00 a.m.) License #32044432-LOP (Valid 4/20/2008 – 4/12/2009)

**Section 4.6(a)**
**Owned Real Property**

**Property Address**:

Hard Rock Park
211 George Bishop Parkway
Myrtle Beach, SC 2957

**Legal Description**:

ALL AND SINGULAR all those certain parcels of land identified as Parcels II-A, II-B, II-C, II-D, II-E, II-F, II-G, II-H, III-A, III-B, III-C, III-D and III-E on that certain plat of survey prepared by Associated Land Surveyors entitled "ALTA/ACSM Survey of Parcels II-A through II-H and Parcels III-A through III-E Fantasy Harbour Area" dated December 2, 2005, as amended February 8, 2006 and March 17, 2006, recorded in the Office of the Register of Deeds for Horry County in Plat Book 212 at Page 213.

LESS AND EXCEPTING THEREFROM, ALL AND SINGULAR all that certain piece, parcel or lot of land shown as Parcel II-A containing 2.71 acres +/- on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 (hereinafter referred to as the "Plat") recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.  NOTE: Said property includes: (i) all of original Parcel II-A, except for that portion combined with Parcel II-H as more fully shown on the Plat and (ii) 23,355 sq. ft. (.54 acres +/-, more or less) from original Parcel III-A as more fully shown on the Plat.

TOGETHER WITH THE FOLLOWING PROPERTY:

Parcel II-H's legal description is hereby amended by adding the following property:

Also included with Parcel II-H is that certain property containing 2,630 sq. ft. (.06 acres +/-, more or less) which was previously a portion of original Parcel II-A which property shall now hereinafter be a part and parcel of Parcel II-H as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

Also included with Parcel II-H is that certain property containing 109 sq. ft. which was previously a portion of Original Parcel III-A which shall now hereinafter be a part and parcel of Parcel II-H as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South

Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

PARCEL III-A'S LEGAL DESCRIPTION IS HEREBY AMENDED BY ADDING THE FOLLOWING PROPERTY:

Also included with Parcel III-A is that certain property containing 2.71 acres +/-, more or less (such property was previously a portion of Tax Parcel 172-00-05-211) which property shall now hereinafter be a part and parcel of Parcel III-A as shown on that certain plat entitled "Plat of Property Exchange Parcel II-A and Christ Church Land Trust, Hard Rock Park, Fantasy Harbour Area, Horry County, South Carolina, Prepared for: HRP Myrtle Beach Operations, LLC" dated April 4, 2006 recorded in the Office of the Register of Deeds on June 20, 2006 in Plat Book 214 at Page 228.

**Section 4.6(b)**
**Leased Real Property**

1.  Warehouse located at 568 George Bishop Pkwy, Myrtle Beach, SC.

**Section 4.6(c)**
**Leasehold Interest Conveyed**

None

**Schedule 7.1**
**Conduct of Business**

None

## Schedule 9.1(ss)
## Permitted Encumbrances

None

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| HRP Myrtle Beach Holdings, LLC et al.,[1] | : Case No. 08-12193 (KJC) |
| | : |
| Debtors | : Jointly Administered |
| | : |
| | : **Related Doc. No.** _____ |
| | : |

## ORDER (I) AUTHORIZING SALE OF HARD ROCK PARK FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN DESIGNATED CONTRACTS AND UNEXPIRED LEASES

This matter is before the Court on the motion[1] (the "Sale Motion") [Docket No. ___],

dated February 9, 2009, of Alfred Giuliano, as Chapter 7 Trustee (the "Trustee") on behalf of the

bankruptcy estate of HRP Myrtle Beach Operations, LLC (the "Selling Debtor," and together

with the other, related debtors, the "Debtors"), and for entry of an order, pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and

9014 approving the asset purchase agreement, a copy of which was attached as Exhibit A to the

Sale Motion, (the "Asset Purchase Agreement") by and among the Trustee and FPI MB

Entertainment LLC (the "Purchaser"), and such other agreements to be entered into and among

the parties as contemplated therein, and authorizing the sale of the Purchased Assets to the

---

[1]     The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC (1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877). The address of each of the Debtors is 211 George Bishop Parkway, Myrtle Beach, South Carolina 29579.

Purchaser (the "Sale") free and clear of all liens, claims, encumbrances, and other interests (all

such liens, claims, encumbrances and other interests shall be referred to collectively as the

"Liens") other than any Permitted Liens and Assumed Liabilities; and the Court having heard

statements of counsel and the evidence presented in support of the relief requested by the Trustee

in the Sale Motion at a hearing before the Court on February 17, 2009 (the "Sale Hearing"); and

it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal

and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the

relief granted herein; and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

---

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Asset Purchase Agreement (as defined herein) and the Sale Motion, as applicable.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The statutory predicates for the relief requested in the Sale Motion are sections

105(a), 363(b), (f), and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2),

6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014.

### Notice of the Sale Hearing

D.    Actual written notice of the Sale Hearing, the Sale Motion, the Sale and a

reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein has been afforded to all interested persons and entities, including, but not

limited to (a) the United States Trustee; (b) counsel to the administrative agents for the Debtors'

prepetition secured lenders; (c) counsel to the Debtors' postpetition lenders; (d) counsel for the

Junior DIP Lenders; (e) counsel for the Senior Indenture Trustee; (f) counsel for the Junior

Indenture Trustee; (g) counsel for the Revolving Credit Agent and Senior Post-Petition Agent;

(h) counsel to the Debtors; (i) creditors holding the twenty (20) largest unsecured claims against

the each of the Debtors as included in the Debtors' Chapter 11 Schedules or their legal counsel,

if known; (j) unsecured creditors with a scheduled claim in excess of $25,000 as identified in the

Selling Debtor's Schedules; (k) any known secured creditors as listed in Schedule D of the

Debtors' Chapter 11 Schedules; (l) parties as listed in Schedule G of the Debtors' Chapter 11

Schedules; (m) all persons or entities known or reasonably believed to have asserted a Lien in

any of the Purchased Assets; (n) the United States Department of Justice; (o) counsel to the

Purchaser; (p) all persons or entities known or reasonably believed to have expressed an interest

in acquiring the Purchased Assets; (q) the Attorney General for the State of South Carolina; (r)

the United States Environmental Protection Agency; (s) South Carolina Environmental

Regulator; (t) Internal Revenue Service; (u) South Carolina Department of Revenue; (v) South

Carolina Dept. of Labor, Licensing and Regulation; (w) Horry County Treasurer's Office; (x)

Horry County Property Assessor; (y) City of Myrtle Beach, Administration; (z) any party who has requested notice and service of papers pursuant to Bankruptcy Rule 2002.

E.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The foregoing notice described in paragraph D was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing or the Sale is required.

F.     The disclosures made by the Trustee concerning the Asset Purchase Agreement, the Sale and the Sale Hearing were good, complete and adequate.

### Good Faith of Purchaser

G.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

H.     Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser agreed to subject its bid to competitive bidding procedures at the Sale Hearing; (c) Purchaser in no way induced or caused the bankruptcy filing by the Debtors; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of controlling stockholders

exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Asset

Purchase Agreement and any other agreements or instruments related thereto was at arms' length

and in good faith.

## Highest and Best Offer

I.      The Purchased Assets have been extensively marketed by the Trustee and, before

that, by the Debtors and their professionals, as evidenced by, among other things, the Debtors'

Motion to Approve an Order (I)(A) Approving Procedures in Connection With the Sale of the

Debtors' Assets; (B) Scheduling the Related Auction to Consider Approval of Sale; (C)

Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired

Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related

Relief; and (II)(A) Authorizing the Sale of Such Assets Pursuant to the Modified Purchase

Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving

the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related

Thereto; and (C) Granting Related Relief (the "Chapter 11 Sale Motion") pursuant to which the

Debtors sought approval of certain procedures in connection with a proposed sale of the Debtors'

assets. Notwithstanding, their efforts, the Debtors were unable to generate any "qualifying

offers," as that term is defined in the Chapter 11 Sale Motion and the Order approving the

Chapter 11 Sale Motion, for the sale of the Selling Debtor's assets.

J.      The Trustee offered the Purchased Assets for sale to any party that would pay the

highest and best price for the Purchased Assets. The sales process afforded a full, fair and

reasonable opportunity for any person or entity to make a higher or otherwise better offer to

purchase the Purchased Assets. The sales process was conducted in a noncollusive, fair and

good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

K.    The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Selling Debtor's estate than would be provided by any other available alternative. The Trustee's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

L.    The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 7 case. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Selling Debtor's estate than the Purchaser as set forth in the Asset Purchase Agreement

M.    Approval of the Sale Motion and the Asset Purchase Agreement, and the consummation of the transactions contemplated therein, is in the best interests of the Selling Debtor, its creditors, the estate and other parties in interest.

### No Fraudulent Transfer

N.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

O.    The Purchaser is not a mere continuation of the Selling Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Selling Debtor. The Purchaser is not holding itself out to the public as a continuation of the Selling Debtor. The Purchaser is not a successor to the Selling Debtor or its estate and the Sale does not amount to a

consolidation, merger or de facto merger of Purchaser and the Selling Debtor. The transactions contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in order to escape liability for the Selling Debtor's debts.

### Validity of Transfers and Sale

P.      The Trustee has full power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

Q.      The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer, and vests or will vest the Purchaser with all right, title, and interest of the Trustee and the Selling Debtor to the Purchased Interests free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.

### Section 363(f) Is Satisfied

R.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and the Permitted Liens), be liable for any of such Liens, including, but not limited to, Liens in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors; (4)

any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (7) any theories of successor liability.

      S.    The Trustee may sell the Purchased Assets to Purchaser free and clear of all Liens against the Trustee, the Selling Debtor, its estate or any of the Purchased Assets (except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. With respect to any and all entities asserting a Lien, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and

instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Lien, with such Lien to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the assets free and clear of such Lien, (iii) such Lien is in *bona fide* dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

T.      Those holders of Liens against the Selling Debtor, its estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens, if any, in each instance against the Selling Debtor, its estate, any of the Purchased Assets, except as otherwise specifically provided by the Asset Purchase Agreement or this Order attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Selling Debtor and its estate may possess with respect thereto.

## Compelling Circumstances for an Immediate Sale

U.      To maximize the value of the Purchased Assets and to preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased

Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale.

V.    Given all of the circumstances of this chapter 7 case and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

W.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED
AND DECREED THAT:

**General Provisions**

1.    The relief requested in the Sale Motion is granted and approved and the Sale contemplated thereby is approved as set forth in this Order.

2.    All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

**Approval of the Asset Purchase Agreement**

3.    The Asset Purchase Agreement and all ancillary or related documents, agreements or instruments and all of the terms and conditions thereof are hereby approved.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Trustee, the Selling Debtor and its estate, all creditors of, and holders of equity interests in, the Selling Debtor (whether known or unknown), any holders of Liens against or on all or any portion of the Purchased Assets, the Purchaser and all successors and assigns of the Purchaser and the Purchased Assets. This Order shall inure to the benefit of the Trustee, the Selling Debtor, its estate, its creditor, the Purchaser and their respective successors and assigns.  The Asset Purchase Agreement shall not be subject to rejection.

## Transfers of the Purchased Assets

6.      Pursuant to sections 105(a), 363(b), 363(f), 365(a) and 365(f)(1) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Trustee's receipt of the Purchase Price, shall be free and clear of all Liens

except any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.  Upon

the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only

to the Permitted Liens and Assumed Liabilities.  Pursuant to section 363(f) of the Bankruptcy

Code, the transfer of title to the Purchased Assets shall be free and clear of (a) any and all Liens,

including, without limitation, all Liens listed on Exhibit A hereto, except for Permitted Liens,

and (b) all interests, liabilities, obligations or claims, including, without limitation, all "claims"

within the meaning of section 101(5) of the Bankruptcy Code and any claims pursuant to any

successor or successor-in-interest liability, control group liability or consolidated group liability

theory.  Except as otherwise specifically provided by the Asset Purchase Agreement or this

Order, all Liens shall attach solely to the proceeds of the Sale with the same validity, priority,

force and effect that they will have as against the Purchased Assets, subject to any claims and

defenses the Trustee, the Selling Debtor and its estate may possess with respect thereto.

       7.     Except as expressly permitted or otherwise specifically provided by the Asset

Purchase Agreement or this Order, all persons and entities holding Liens or interests in all or any

portion of the Purchased Assets (other than Permitted Liens and the Assumed Liabilities) arising

under or out of, in connection with, or in any way relating to the Selling Debtor, the Purchased

Assets, the operation of the Selling Debtor's business prior to the Closing Date or the transfer of

the Purchased Assets to Purchaser, hereby are forever barred, estopped and permanently enjoined

from asserting against the Purchaser or its successors or assigns, their property, the Purchased

Assets, such persons' or entities' Liens or interests in and to the Purchased Assets.  On and after

the Closing Date, the Trustee, the Purchaser and each such creditor is authorized to execute such

documents and take all other actions as may be necessary to release Liens (except Permitted

Liens) on the Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

8.      The Purchaser and, as the case may be, the Trustee, are authorized to remit payment directly to third parties in accordance with Section 6.2 of the Asset Purchase Agreement, and any agreement between the Trustee and the Senior Revolving Lenders in respect of administrative claims, pursuant to wire transfer or other payment instructions to be provided to them.  Without limiting the foregoing, any payments to be made by or due from the Trustee to the Purchaser or a third party in accordance with the terms of the Asset Purchase Agreement shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

9.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser, in accordance with the terms of the Asset Purchase Agreement and this Order.

10.      All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

11.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any appropriate in order to cancel any of the Liens and other encumbrances of record except the Permitted Liens.

12.      If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee, prior to the Closing, in proper form for filing and executed by

the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee and the Purchaser are hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

13.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

14.    The proceeds from the sale of the Purchased Assets, less any normal and customary costs of closing including real estate taxes (excluding amounts paid by the Purchaser in accordance with the terms of the Asset Purchase Agreement), and net of an amount equal to (A) the amount of $1,273,250 for the benefit and use of the Selling Debtor, (B) the fees and expenses of Raymond James with respect to its role in the sale process, and (C) administrative expenses in an amount and subject to terms and documentation to be separately agreed between the Trustee and the Senior Revolving Lenders, shall be used first to pay (and shall be paid

directly to) the Senior Revolving Lenders until their claims are paid in full, including, without limitation, claims for any and all principal, unpaid hedging obligations, interest, attorneys' fees and expenses and advances made during the Chapter 7 Case, in each case, to the fullest extent provided under the Pre-Petition Loan Documents. Any remaining proceeds from the sale of the Purchased Assets (after the claims of the Senior Revolving Lenders have been paid in full) shall be delivered to the Trustee for distribution among the creditors of the Bankruptcy Estate in accordance with the order of priority applicable to their claims;

### Other Provisions

15.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien (other than a Permitted Lien) or interest arising under, out of, in connection with or in any way relating to the Selling Debtor, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) any claim of successor liability or similar theory or doctrine, including with respect to both (a) and (b), without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the

Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with, on or in relation to the Purchased Assets.

16.     Except for the Permitted Liens and the Assumed Liabilities or as otherwise expressly provided for in this Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Trustee, the Selling Debtor or the estate arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, the Selling Debtor or any of its or their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, the Selling Debtor or the estate or any obligations of the Trustee, the Selling Debtor or the estate arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of, or businesses operated with, on or in relation to, any of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Liens and other claimants. The consideration given by the Purchaser

shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens and claims against or interests in the Selling Debtor or the Purchased Assets.

17.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and the Sale is duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.     Nothing contained in any order of any type or kind entered in (i) this chapter 7 case or any related proceeding subsequent to entry of this Order, shall conflict with, derogate from, or affect in any manner, the provisions of the Asset Purchase Agreement or the terms of this Order.

19.     Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

20.     Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser any coverage, rights or benefits under the liability insurance policies of the Selling Debtor with respect to claims arising out of or relating to any occurrence or event that happened prior to Closing, notwithstanding the transfer to the Purchaser, to the extent assignable or transferable in accordance with the terms and conditions of the applicable insurance policies

or applicable Law, all of the Company's insurance policies and rights and benefits related to the

Purchased Assets or Assumed Liabilities.

21.    No bulk sales law or any similar law of any state or other jurisdiction applies in

any way to the Sale.

22.    The failure specifically to include any particular provision of the Asset Purchase

Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Asset Purchase Agreement be authorized and approved in its

entirety.

23.    The Asset Purchase Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court, provided that any such modification,

amendment or supplement does not have a material adverse effect on the Debtor's estate.

24.    The Court shall retain jurisdiction to, among other things, interpret, implement,

and enforce the terms and provisions of this Order, the Asset Purchase Agreement, all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith to which the Trustee is a party or which has been assigned by

the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or

relating in any way to the Sale.

25.    In the event the Asset Purchase Agreement is validly terminated in accordance

with its terms (or if a sale is delayed so that the Purchase Price is reduced below $22 million), the

Trustee is hereby authorized to sell and convey (on a date to be agreed) the Purchased Assets to

the Senior Revolving Lenders (or their designee) on a full credit bid basis pursuant to Section

363(k) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, and

otherwise subject to all of the terms and conditions (to the extent applicable or relevant), and all Purchaser's protections and benefits, as set forth herein and in the Asset Purchase Agreement and related documents.

26.     The procedures for the assumption and assignment of certain executory contracts and unexpired leases designed by Purchaser are approved as follows:

(a)     On or before February 27, 2009, the Purchaser shall advise the Trustee which, if any, of the designated executory contracts and unexpired leases the Purchaser desires to have assigned to it.

(b)     No later than February 28, 2009, the Trustee shall promptly file a motion seeking to assume and assign the designated executory contracts and unexpired leases to Purchaser (the "Assumption and Assignment Motion"), and the Trustee shall serve a copy of the Assumption and Assignment Motion upon all nondebtor parties to all executory contracts and unexpired leases designated by the Purchaser for assumption and assignment to the Purchaser.   The Trustee shall include with the service of the Assumption and Assignment Motion, a copy of financial documents evidencing the Purchaser's financial credibility, willingness and ability of the Purchaser to perform under the designated executory contracts and unexpired leases.

(c)     All nondebtor parties to any executory contracts and unexpired leases designated to be assumed and assigned to the Purchaser by and through the Assumption and Assignment Motion shall have until March __, 2009 at _____ _.m. to file an objection to the proposed assumption and assignment of any executory contracts and unexpired leases to which it is a party.

(d)     The Bankruptcy Court shall consider the Assumption and Assignment Motion at a hearing on March 6, 2009 at _____ _.m., and any objections thereto.   At the hearing to consider the Assumption and Assignment Motion, the Trustee will present evidence to prove the Purchaser's financial credibility, willingness and ability to perform under the designated executory contracts and unexpired leases, and the Court and other interested parties therefore will have the opportunity to evaluate the Purchaser's ability to provide adequate assurance of future performance under the contracts or leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

(e)     Any objection to the cure amount or adequate assurance of future performance that is not timely filed shall be deemed waived.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Sale Motion or otherwise waived.

29.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

30.     To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement, the terms of this Order shall control.

31.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern.

DATE: February __, 2009

SO ORDERED:

_____

HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

1.    Horry County real property and personal taxes and Rural Fire District and Stormwater

Assessments for 2008 and prior years, now due and payable, plus penalties and interest,

including, without limitation, as follows:

| | | | |
|---|---|---|---|
| 172-00-05-015 | Receipt No. 2008-099283 | $ | 154,010.11 |
| 172-00-05-256 | Receipt No. 2008-099284 | $ | 8,412.14 |
| 172-00-05-269 | Receipt No. 2008-099285 | $ | 735.61 |
| 172-00-05-192 | Receipt No. 2006-293124A | $ | 54.94 |
| 172-00-05-194 | Receipt No. 2006-293125A | $ | 5,505.17 |
| 172-00-05-195 | Receipt No. 2006-293126A | $ | 740.64 |

2.    First Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach

Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as administrative

agent and collateral agent on behalf of the Secured Parties, dated March 30, 2006, recorded on

March 30, 2006, in Mortgage Book 4470 at page 375, records of Horry County, and Partial

Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 2,

2006, in Mortgage Book 4601 at page 1400, records of Horry County.

3.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 402,

records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and

Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving Lenders;

amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1406, and

amendment filed on July 3, 2006, in Mortgage Book 4601 at page 1408; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2680, and termination of Mortgage Book

4601 at page 1406 in Mortgage Book 5001 at page 2663, records of Horry County.

4.    Senior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 406, and Partial Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3, 2006, in Mortgage Book 4601 at page 1410, records of Horry County.

5.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 433, records of Horry County, showing Selling Debtor as HPR Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Senior Secured Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1415, and amendment filed on July 3, 2006 in Mortgage Book 4601 at page 1417; terminated on December 3, 2007, in Mortgage Book 5001 at page 2681, and termination of Mortgage Book 4601 at page 1415 in Mortgage Book 5001 at page 2684, records of Horry County.

6.    Junior Lien Mortgage, Security Agreement and Fixture Filing from HRP Myrtle Beach Operations, LLC to Deutsche Bank Trust Company Americas, in its capacity as trustee, dated March 30, 2006, recorded on March 30, 2006, in Mortgage Book 4470 at page 437, and Partial Release of Mortgage and Substitution of Collateral dated June 30, 2006, recorded on July 3, 2006, in Mortgage Book 4601 at page 1419, records of Horry County.

7.    UCC Financing Statement filed on March 30, 2008, in Mortgage Book 4470 at page 464, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC and Secured Party as Deutsche Bank Trust Company Americas, as Trustee for the Junior Secured Noteholders; amended by amendment filed July 3, 2006, in Mortgage Book 4601 at page 1425, and amendment filed July 3, 2006 in Mortgage Book 4601 at page 1427; terminated on

December 3, 2007, in Mortgage Book 5001 at page 2682, and termination of Mortgage Book

4601 at page 1425 in Mortgage Book 5001 at page 2685, records of Horry County.

8.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page

2665, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC

and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Revolving

Lenders.

9.      UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page

2670, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC

and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Senior Secured

Noteholders.

10.     UCC Financing Statement filed on December 3, 2007, in Mortgage Book 5001 at page

2675, records of Horry County, showing Selling Debtor as HRP Myrtle Beach Operations, LLC

and Secured Party as Deutsche Bank Trust Company Americas, as Agent for the Junior Secured

Noteholders.

11.     Notice of Project Commencement given by Sturzenbecker Construction Co., Inc. filed on

May 15, 2007, in Lien Book 150 at page 1651, records of Horry County.

12.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on

July 13, 2007, in Lien Book 151 at page 2290, records of Horry County.

13.     Notice of Project Commencement given by M.B. Kahn Construction Co., Inc. filed on

September 17, 2007, in Lien Book 153 at page 311, records of Horry County.

14.     Notice of Mechanic's Lien and Statement of Account in the amount of $324,028.92,

Jerry's Plumbing, LLC, Petitioner vs. HRP Myrtle Beach Operations, LLC and Hensel Phelps

Construction Co., Respondents, filed on June 18, 2008, in Lien Book 160 at page 2375, records

of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on July 22, 2008, in Lien Book 163 at page 750, records of Horry County. Notice of Lis Pendens filed on July 10, 2008 as 2008-CP-26-1995, records of Horry County Clerk of Court and was cancelled on July 22, 2008.

15.    Statement and Notice of Mechanic's Lien in the amount of $12,249.00 from Otis Elevator company to Hensel Phelps Construction Co., filed on July 11, 2008, in Lien Book 163 at page 75, records of Horry County. Said lien was cancelled by Satisfaction of Mechanic's Lien filed on July 22, 2008, in Lien Book 163 at page 744, records of Horry County.

16.    Notice and Certificate of Mechanic's Lien in the amount of $101,141.30, Neuman Pools, Inc. Plaintiff vs. HRP Myrtle Beach Operations, LLC, d/b/a Hard Rock Park, Hensel Phelps Construction Co. and Deutsche Bank Trust Company Americas, filed on July 15, 2008, in Lien Book 163 at page 236, records of Horry County. Said lien was cancelled by Notice of 17.

Cancellation of Mechanic's Lien filed on July 17, 2008, in Lien Book 163 at page 315, records of Horry County.

18.    Notice and Certificate of Mechanic's Lien in the amount of $329,308.00, SCS Interactive, Inc., Claimant vs. HRP Myrtle Beach Operations, LLC, Owner, filed on August 4, 2008, in Lien Book 163 at page 1904, records of Horry County.

19.    Claim of Lien in the amount of $5,964.92, Hertz Equipment Rental Corp., Claimant and HRP Myrtle Beach Operations, LLC, Owner, Hensel Phelps Construction Company, Contractor, filed on August 5, 2008, in Lien Book 163 at page 2051, records of Horry County. Said lien was cancelled by Satisfaction of Lien filed on August 22, 2008, in Lien Book 164 at page 399, records of Horry County.

20.     Notice of claim of Mechanic's Lien and Statement of Account in the amount of $964,609.10, Premier Rides, Inc., Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant, filed on August 13, 2008, in Lien Book 163 at page 2989, records of Horry County.  Affidavit of Service filed on August 18, 2008, in Lien Book 163 at page 3328, records of Horry County.

21.     Amended Notice of Claim of Mechanic's Lien and State of Account filed on September 23, 2008, in Lien Book 164 at page 3011, records of Horry County.  Affidavit of Service filed on October 1, 2008, in Lien Book 165 at page 1842.  Second Amended Notice of Claim of Mechanic's Lien and Statement of Account filed on October 8, 2008, in Lien Book 165 at page 2727, increases the lien amount to $1,466,676.90, which amendment was re-recorded October 17, 2008, Lien Book 166 at page 387, records of Horry County.  Affidavit of Service filed October 17, 2008 in Lien Book 166 at page 378.

22.     Notice of Mechanic's Lien in the amount of $3,625.00, Grand Strand Fire Sprinklers of SC, Inc., Petitioner, vs. HRP Myrtle Beach Operations, LLC, Respondent, filed on September 4, 2008, in Lien Book 164 at page 1614, records of Horry County.

23.     Notice of Mechanic's Lien and Statement of Account in the amount of $372,256.14, Morris Architects, Plaintiff vs. HRP Myrtle Beach Operations, LLC, Defendant, filed on September 30, 2008, in Lien Book 165 at page 1630, records of Horry County.

24.     Complaint filed on February 20, 2008, in Civil Action 2008-CP-26-1423, entitled Marsha A. Widmer, Plaintiff vs. HRP Myrtle Beach Operations, LLC d/b/a Hard Rock Park, records of Horry County Clerk of Court.

25.     Notice and Certificate of Mechanic's Lien in the amount of $25,577.15, on behalf of GEM Industries, Inc. against HRP Myrtle Beach Operations, LLC, filed on October 23, 2008, in Lien Book 166 at page 1200, records of Horry County.

26.     Claim of Lien filed by Hertz Equipment Rental Corp. #9316 against HRP Global Management, LLC for HRP Myrtle Beach Operations, LLC, in the amount of $23,579.95, filed on November 13, 2008, in Lien Book 166 at page 2752, records of Horry County.

27.     Printout from Grand Strand Water & Sewer Authority computer showing reactivation charge of $2,520.00.

28.     The rights of any party to possession of the Premises.

29.     Any assessments, water rents and/or charges, sewer rents and/or charges, sewer hook-up charges, fire service, gas charges, common charges (i.e. condominium or association charges or dues) and other municipal charges that would constitute a lien and be currently due and payable.

30.     Unfiled mechanic's liens and/or materialmen's liens for which the statutory period for filing has not expired.

# EXHIBIT C

# EXHIBIT C

**Highlighted Provisions Pursuant to Local Rule 6004-1**

In accordance with Local Rule 6004-1, the Trustee respectfully represents the following:

a) **Purchaser:** FPI MB Entertainment LLC

b) **Purchase Price:** $25,000,000

c) **Purchased Assets**: See Paragraph 1.1 (a) of the Asset Purchase Agreement (the "APA").

d) **Sale is Not to an Insider:** The Purchaser is not an "insider" of the Debtors, as that term is defined in the Bankruptcy Code.

e) **Agreements with Management:** No agreements with Debtors' management have been entered into in connection with the sale.

f) **Releases**: Section 12.11 of the APA, titled "Limitation On Damages" provides "In no event shall either party or their respective affiliates have any liability to the other party or any other person for any special, consequential, indirect, exemplary or punitive damages (including any damages on account of lost profits or opportunities or business interruption and the like), whether by statute, in tort or under contract, and any such claim, right or cause of action for any such damages is hereby fully waived, released and forever discharged."

g) **Private Sale:** As set forth in Paragraphs 47 – 48 of the Sale Motion, the Trustee is seeking to conduct the proposed sale without establishing bidding procedures, however in the event that any interested purchaser notifies the Bankruptcy Court of their intention to bid at the hearing to consider the Sale Motion, the Trustee will conduct an auction on the same day to consider any additional higher and better offers.

h) **No Solicitation**. Effective as of the Diligence Date, or such earlier date as Purchaser shall notify Trustee in writing that the Purchaser waives the right to terminate the APA pursuant to paragraph 3.5(e) thereof, until the termination of the APA in accordance with Section 3.5 thereof, none of the Trustee, the Senior Revolving Lenders or any officer, director, employee, agent or representative (including any investment banker, financial advisor, attorney, accountant or other representative) of the Trustee or the Senior Revolving Lenders shall directly or indirectly (i) solicit, initiate, encourage, facilitate (including by way of furnishing information) or take any other action designed to facilitate any inquiries or proposals regarding any merger, share exchange, consolidation, sale of assets, sale of shares of capital stock (including by way of a tender offer) or similar transactions involving the Bankruptcy Estate or any of the Purchased Assets that, if consummated, would constitute an Alternative Transaction (any of the foregoing inquiries or proposals, including the indication of any intention to propose any of the foregoing, being referred to herein as an "Alternative Proposal"), (ii) participate in any discussions or negotiations regarding an

Alternative Transaction or (iii) enter into any agreement regarding any Alternative Transaction.

i)     **Closing and Other Deadlines**: Closing is scheduled to occur no later than February 20, 2009, unless another time or date, or both, are agreed to in writing by the parties to the Modified Purchase Agreement. In the event the sale does not close by February 20, 2009, the Purchase Price shall be reduced by the sum of One Million Dollars ($1,000,000), and the Purchase Price shall be further reduced in the amount of Fifty Thousand Dollars ($50,000) for each day after February 20, 2009 that the Closing does not occur. Further, as set forth in Section 6.3 of the APA, there is a deadline of February 27, 2009 for the Purchaser to advise the Trustee which, if any, of the designated Contracts the Purchaser desires to have assigned to it. The Trustee shall promptly file a motion seeking to assume and assign the designated Contracts to Purchaser and the Trustee shall use its commercially reasonable best efforts to have such motion heard by the Bankruptcy Court prior to March 7, 2009.

j)     **Good Faith Deposit**: Prior to the hearing to consider the Sale Motion, the Purchaser shall submit a deposit in the amount of Two Million, Three Hundred Thousand Dollars ($2,300,000.00) which will be held by the Trustee in accordance with the terms and conditions of the Escrow Agreement attached as Exhibit C to the APA.

k)     **Interim Arrangements with Proposed Buyer**: There are no interim arrangements with any proposed buyer.

l)     **Use of Proceeds**: Paragraphs 35 - 36 of the Sale Motion set forth how the proceeds of the sale shall be distributed upon Closing.

m)     **Tax Exemption**: No tax exemptions under section 1146(a) of the Bankruptcy Code are contemplated in connection with the Sale.

n)     **Record Retention**: Pursuant to Section 7.3(b) of the APA, "from and after the Closing Date, the Purchaser shall give the Trustee and the Trustee's Representatives reasonable access during normal business hours upon reasonable advance notice and under reasonable circumstances to the offices, facilities, properties, assets, employees, Documents (including, without limitation, any Documents included in the Purchased Assets), personnel files and books and records of the Purchaser pertaining to (i) the conduct of the Business or ownership of the Purchased Assets prior to the Closing Date or (ii) the Excluded Assets and Excluded Liabilities. Without limiting the generality of the foregoing, the Purchaser shall, and shall use commercially reasonable efforts to cause each of its Affiliates to, cooperate with the Trustee."

o)     **Sale of Avoidance Actions**: As set forth in Section 1.2(g) of the APA, the sale does not include the transfer of any avoidance claims or causes of action under the Bankruptcy Code or applicable state Law, including, without limitation, all rights

and avoidance claims of the Bankruptcy Estate arising under Chapter 5 of the Bankruptcy Code;

p)   **Requested Findings as to Successor Liability:**   The Buyer would be undertaking only those certain assumed liabilities set forth in Section 1.3 of the APA.  All other liabilities not expressly assumed by the Buyer under the APA, whether or not incurred or accrued on or after the Closing Date, shall be retained by the estate of the Selling Debtor, and the Purchase shall not have any successor liability.

q)   **Sale Free and Clear of Unexpired Leases:**  The Trustee is seeking to sell the Assets free and clear of liens and other interests pursuant to Section 363(l) of the Bankruptcy Code. Pursuant to Section 6.3 of the APA, the Purchaser shall have until February 13, 2009 to designate the executory contracts or unexpired leases that the Purchaser desires deleted from the list of executory contracts to be rejected, in which case the Trustee shall withdraw the motion as to all executory contracts and unexpired leases so designated by Purchaser.  If the Purchaser designates a contract or lease for deletion from the list of executory contracts and unexpired leases to be rejected and subsequently removes such contract or lease from the list of contracts or leases to be assigned to it, the Purchaser shall pay to the Trustee the amount of any administrative expense incurred by the Bankruptcy Estate on account of such contract or lease during the period commencing with the Conversion Date through the date of rejection of such contract or lease.

r)   **Relief from Bankruptcy Rule 6004(h) and 6006(d):**  As set forth in Paragraphs 60 – 62  in the Sale Motion, the Trustee is requesting relief from the 10-day stay imposed by Rule 6004(h) and 6006(d).