## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| HRP MYRTLE BEACH HOLDINGS, LLC | § | CASE NO. 08-12193 (KJC) |
| ET AL.[1] | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |
| | § | Chapter 7 |
| | § | |

### MOVANT'S SUMMARY OF DOCUMENTS AND TESTIMONY

On March 24, 2009, this Court ordered that FPI/MBE LLC ("FPIMBE") and HRP Creative Services Co., LLC ("Creative Services") submit a summary of witness testimony and documents to this Court by noon on Thursday, March 26, 2009. This hearing brief provides the summary requested by the Court.

### I.    INTRODUCTION

Goodwin ("Goodwin") and Creative Services are trying to steal for the second time what was never theirs in the first place. FPIMBE will present documents and testimony to the Court at this Friday's hearing that will prove that the concept for a rock and roll themed amusement park existed long before Goodwin, through an act of self-dealing, sought to transfer the Park's intellectual property to an entity he controlled, Creative Services, for no consideration and at a steep licensing fee.

Rather than submit to Goodwin's extortion, FPIMBE seeks this Court's ruling that Goodwin and Creative Services had knowledge of the Asset Purchase Agreement and Sale

---

[1]    The Debtor includes the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC (15460), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp., (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877).

Order, but failed to object, and under well-settled bankruptcy law, Goodwin and Creative

Services lost all rights in the Park. At best, Goodwin may argue that Schedule 1.1(e) carves out

intellectual property belonging to Creative Services, but FPIMBE's documents and testimony

will show that the Debtor – not Creative Services – paid for the registration of the ten trademarks

that the APA purportedly carved out.

## II.   SUMMARY OF DOCUMENTS

In support of its Motion to Enforce, FPIMBE attaches the following documents:

### A.   Documents Proving Goodwin and Creative Services Received Notice of the Sale

#### Exhibit 1: Section 1.1(e) of the Asset Purchase Agreement

#### Exhibit 2: the Sale Order

#### Exhibit 3: Certificate of Service of Sale Motion

### B.   Goodwin's Documents Alleging Ownership of the Park's Intellectual Property

#### Exhibit 4: Goodwin's March 1, 2009 E-Mail to Michael O'Keefe

On March 1, 2009, Goodwin wrote an e-mail to Michael O'Keefe, a representative of

FPIMBE, which ignited this round of motion practice by alleging that FPIMBE could not re-

open the Park without first paying a licensing fee to Creative Services. In his e-mail, Goodwin

claims to own not just certain trademarks, but also the design, layout, and structure of the Park:

> First let me note that the Intellectual Property owned by HRP
> Creative Services Co., LLC constitutes ***much more*** than the
> trademarks relating to Hard Rock Park. The Park, ***as built***,
> incorporates the Creative Content throughout it's [sic] layout,
> including the building design and attraction layouts. I find it
> ***inconceivable*** that you can ***consider*** opening the Park in 2009
> without securing an agreement with us to utilize our Intellectual
> Property, as the cost and time to ***strip out*** our Creative Content
> would seem to rule out such a course of action.[2]

---

[2]   *See* Ex. 4 (emphasis supplied).

Of course, Goodwin was more than willing to license the Park's intellectual property back to the Park's new owners, as he did with the Debtor, for a royalty of 1.5% of the Park's gross revenue, with a $500,000 up front payment every year.[3] Rather than submit to Goodwin's extortion, FPIMBE filed its Motion to Enforce the Sale Order.

### Exhibit 5: The Creative Services Agreement ("CSA")

The CSA is the document by which Goodwin and Creative Services claim its intellectual property rights. Goodwin signed the CSA both on behalf of the Debtor and Creative Services in March of 2006. Thus, there was no one to challenge the agreement's contention that Goodwin and other principals of Creative Services were the owners of the Park's intellectual property. FPIMBE will hotly contest this claim, however, at Friday's hearing and in any future litigation.

### C. Documents Refuting Goodwin's Claims

### Exhibit 6: Debtor's Workbook of Trademark Registration Payments

Exhibit 6 is a portion of the Debtor's workbook regarding costs incurred in developing the Park. The portion excerpted here proves that the Debtor – not Creative Services – paid for the trademarks that Goodwin claims to own. The Debtor paid for the application fees, the registration fees, and the legal fees associated with each and every one of the ten trademarks Goodwin claims to own. These trademarks are therefore the Debtor's property.

### Exhibit 7: Demonstrative Exhibit of Licenses Purportedly Covered by Schedule 1.1(e)

FPIMBE has created the demonstrative exhibit attached hereto as Exhibit C to delineate clearly the trademarks to which Schedule 1.1(e) does (and does not) pertain. Schedule 1.1(e)

---

[3]      *Id.*

only lists ten licenses on Park equipment that allegedly belong to Creative Services.[4]   As described in Exhibit C, these ten licenses refer to "word marks" held by Creative Services in the names of the Park equipment. Thus, even if these marks were valid, which they are not, well settled Third Circuit law establishes that the protection of a registered mark extends only to the services specified in the registration (*i.e.*, the names of each ride).[5]

For example, Creative Services has registered the name "Slippery When Wet" with the U.S. Patent Trademark Office. That name is attached to a specific ride at the Park, which is similar to water rides at other amusement parks. And Schedule 1.1(e) might potentially carve out the licensing rights of that name to Creative Services. If Creative Services only contends that FPIMBE must change the name of the ride, then Friday's hearing will be very short indeed, as FPIMBE will agree to rebrand those ten rides removing all traces of Goodwin or Creative Services' purported rights so that the Park can open by Memorial Day as planned. But FPIMBE reserves its rights to challenge those ten marks as being void *ab initio* and on other grounds.

But Goodwin claimed in his March 1st e-mail that Creative Services could stop the FPIMBE from re-opening the Park because it owns all of the Park's "Creative Content." One look at the Creative Services Agreement and how it describes the "Slippery When Wet" ride reveals that the CSA's broad description of "Creative Content" is at odds with the narrow protection that Schedule 1.1(e) affords. According to the CSA, Creative Services owns the Creative Content of:

---

[4]   It is worth noting that nothing in Schedule 1.1(e) speaks to the validity of these licenses or marks, nor does it address whether the Creative Services Agreement is a valid and enforceable contract.

[5]   *National Footwear, Ltd. v. Hart Schaffner & Marx*, 760 F.2d 1383, 1396-97 (3d Cir. 1985). In reaching that holding, the Third Circuit specifically rejected the reasoning and holding of *Key Chemicals, Inc. v. Kelite Chemicals Corp.*, 464 F.2d 1040, 1043 (Cust. & Pat. App. 1972), a case in which the Court of Customs and Patent Appeals concluded that federal registration might protect products that are not specifically identified in the registration. *See also Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, (2d Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979) ("Indeed, even if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate here shoes, slippers and sandals.").

Wet and Splashy Coaster. This coaster is a sit down or hanging coaster that allows guests to ride through sprits, sprays and splashes of water while dumping and/or spraying water on people down below. Expressly contemporary, the queue line features music videos from today's hot music artists/groups and/or montages of great wipeouts (surfing, windsurfing, waterskiing, skateboarding, snowboarding, etc.) The queue line would also feature water play elements and water guns/hoses to shoot at riders as they pass by.

> *Title: "Slippery When Wet"* or any other title that reflects wetness, water, coaster riding, slipperiness, splashing, contemporary music, etc.

There is a tremendous divide between what Schedule 1.1(e) purports to protect (the ten names) and the "Creative Content" claimed by Goodwin in his e-mail (the concept of a water-based roller coaster). Because Goodwin claims to own all of the Park's creative concepts, FPIMBE filed its Motion to Enforce to prevent Goodwin from hijacking the Park's re-opening with his baseless claims to the Park's intellectual property.

### **Exhibit 8: Consent Agreement with Deutsche Bank**

FPIMBE attaches this document because it is the first of many that will show Goodwin's attempt to defraud the Debtor's estate by claiming that Creative Services owns the Park's intellectual property. Under this agreement, Goodwin pledged the Debtor's license under the CSA as security for the Debtor's obligations to Deutsche Bank. Pursuant to the terms of this agreement, the licensing rights of Creative Services' intellectual property have not reverted back to the company because Deutsche Bank retains the option of exercising the option. But Goodwin appears to have refused to honor this obligation by now asserting that Creative Services owns this intellectual property, which prohibits any purchaser (including FPIMBE) from operating the Park without first paying for a license.

## III.    SUMMARY OF TESTIMONY

FPIMBE will present the testimony of Tim Duncan at the hearing.  Mr. Duncan will testify that: (1) the Park's concept and related themes, design, and layout were conceived prior to Goodwin's involvement with the project; (2) the Park's layout was created by Damron Design, not Creative Services, prior to Goodwin's involvement; (3) Goodwin performed his early work at the Park on behalf of FHTP, LLC, who paid Goodwin a monthly $10,000 fee for his services; (4) the Debtor – not Goodwin – paid the costs associated with filing the Park's trademark registrations; and (5) Goodwin did not seek board approval before assigning the Park's intellectual property to Creative Services and licensing it back to the Debtor.  FPIMBE estimates that Mr. Duncan's direct testimony will take approximately twenty (20) minutes.

Dated: March 26, 2009         Respectfully submitted,
Wilmington, Delaware

/s/ Tobey M. Daluz
Tobey M. Daluz, Esquire (No. 3939)
Joshua E. Zugerman, Esquire (No. 5261)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: daluzt@ballardspahr.com
          zugermanj@ballardspahr.com

-and-

Walter J. Scott, Esquire
DIAMOND McCARTHY LLP
1201 Elm Street, 34th Floor
Dallas, Texas 75720
Telephone:  (214) 389-5300
Telecopier:  (214) 389-5399
E-mail: sscott@diamondmccarthy.com

-and-

Arley D. Finley, III, Esquire
Raymond E. White, Esquire
DIAMOND MCCARTHY LLP
6504 Bridgepoint Parkway, Suite 400
Austin, Texas 78730
Telephone: (512) 617-5200
Telecopier: (512) 617-5299
E-mail: tfinley@diamondmccarthy.com
          rwhite@diamondmccarthy.com

COUNSEL FOR FPI/MBE, LLC