## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| HRP Myrtle Beach Holdings, LLC *et al.*,[1] | : | Case No. 08-12193 (KJC) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |
| | : | Related Doc. No.    401 |

### ORDER (I) AUTHORIZING SALE OF HARD ROCK PARK FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN DESIGNATED CONTRACTS AND UNEXPIRED LEASES

This matter is before the Court on the motion[1] (the "Sale Motion") [Docket No. 401], dated February 9, 2009, of Alfred Giuliano, as Chapter 7 Trustee (the "Trustee") on behalf of the bankruptcy estate of HRP Myrtle Beach Operations, LLC (the "Selling Debtor," and together with the other, related debtors, the "Debtors"), and for entry of an order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 approving the asset purchase agreement, a copy of which was attached as Exhibit A to the Sale Motion, (the "Asset Purchase Agreement") by and among the Trustee and FPI MB Entertainment LLC (the "Purchaser"), and such other agreements to be entered into and among the parties as contemplated therein, and authorizing the sale of the Purchased Assets to the

---

[1]    The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): HRP Myrtle Beach Holdings, LLC (1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138) and We Got Your Back Security Co., LLC (3877). The address of each of the Debtors is 211 George Bishop Parkway, Myrtle Beach, South Carolina 29579.

[1]    Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Asset Purchase Agreement (as defined herein) and the Sale Motion, as applicable.

EXHIBIT

2

Purchaser (the "Sale") free and clear of all liens, claims, encumbrances, and other interests (all such liens, claims, encumbrances and other interests shall be referred to collectively as the "Liens") other than any Permitted Liens and Assumed Liabilities; and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Trustee in the Sale Motion at a hearing before the Court on February 17, 2009 (the "Sale Hearing") including statements from counsel concerning the resolution of the Limited Objection of Hard Rock Café International, (USA), Inc. and Hard Rock Café International (STP), Inc. (collectively, the "Hard Rock Entities") to the Motion (the "Hard Rock Objection") and representation of the Trustee that the Purchaser is not purchasing any rights under any agreements with the Hard Rock Entities; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

### Jurisdiction, Final Order and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).    This is a core proceeding pursuant to 28 U.S.C. §

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

- 2 -

157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014.

## Notice of the Sale Hearing

D.    Actual written notice of the Sale Hearing, the Sale Motion, the Sale and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to (a) the United States Trustee; (b) counsel to the administrative agents for the Debtors' prepetition secured lenders; (c) counsel to the Debtors' postpetition lenders; (d) counsel for the Junior DIP Lenders; (e) counsel for the Senior Indenture Trustee; (f) counsel for the Junior Indenture Trustee; (g) counsel for the Revolving Credit Agent and Senior Post-Petition Agent; (h) counsel to the Debtors; (i) creditors holding the twenty (20) largest unsecured claims against the each of the Debtors as included in the Debtors' Chapter 11 Schedules or their legal counsel, if known; (j) unsecured creditors with a scheduled claim in excess of $25,000 as identified in the Selling Debtor's Schedules; (k) any known secured creditors as listed in Schedule D of the Debtors' Chapter 11 Schedules; (l) parties as listed in Schedule G of the Debtors' Chapter 11 Schedules; (m) all persons or entities known or reasonably believed to have asserted a Lien in any of the Purchased Assets; (n) the United States Department of Justice; (o) counsel to the

- 3 -

Purchaser; (p) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Purchased Assets; (q) the Attorney General for the State of South Carolina; (r) the United States Environmental Protection Agency; (s) South Carolina Environmental Regulator; (t) Internal Revenue Service; (u) South Carolina Department of Revenue; (v) South Carolina Dept. of Labor, Licensing and Regulation; (w) Horry County Treasurer's Office; (x) Horry County Property Assessor; (y) City of Myrtle Beach, Administration; (z) any party who has requested notice and service of papers pursuant to Bankruptcy Rule 2002.

E.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The foregoing notice described in paragraph D was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing or the Sale is required.

F.    The disclosures made by the Trustee concerning the Asset Purchase Agreement, the Sale and the Sale Hearing were good, complete and adequate.

### Good Faith of Purchaser

G.    The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

H.    Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Trustee was

- 4 -

free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser agreed to subject its bid to competitive bidding procedures at the Sale Hearing; (c) Purchaser in no way induced or caused the bankruptcy filing by the Debtors; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of controlling stockholders exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto was at arms' length and in good faith.

### Highest and Best Offer

I.    The Purchased Assets have been extensively marketed by the Trustee and, before that, by the Debtors and their professionals, as evidenced by, among other things, the Debtors' Motion to Approve an Order (I)(A) Approving Procedures in Connection With the Sale of the Debtors' Assets; (B) Scheduling the Related Auction to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Such Assets Pursuant to the Modified Purchase Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief (the "Chapter 11 Sale Motion") pursuant to which the Debtors sought approval of certain procedures in connection with a proposed sale of the Debtors' assets.  Notwithstanding, their efforts, the Debtors were unable to generate any "qualifying

- 5 -

offers," as that term is defined in the Chapter 11 Sale Motion and the Order approving the Chapter 11 Sale Motion, for the sale of the Selling Debtor's assets.

J.    The Trustee offered the Purchased Assets for sale to any party that would pay the highest and best price for the Purchased Assets. The sales process afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The sales process was conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

K.    The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Selling Debtor's estate than would be provided by any other available alternative. The Trustee's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

L.    The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 7 case. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Selling Debtor's estate than the Purchaser as set forth in the Asset Purchase Agreement

M.    Approval of the Sale Motion and the Asset Purchase Agreement, and the consummation of the transactions contemplated therein, is in the best interests of the Selling Debtor, its creditors, the estate and other parties in interest.

### No Fraudulent Transfer

- 6 -

N.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

O.    The Purchaser is not a mere continuation of the Selling Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Selling Debtor. The Purchaser is not holding itself out to the public as a continuation of the Selling Debtor. The Purchaser is not a successor to the Selling Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Selling Debtor. The transactions contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in order to escape liability for the Selling Debtor's debts.

### Validity of Transfers and Sale

P.    The Trustee has full power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

Q.    The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer, and vests or will vest the Purchaser with all right, title, and interest of the Trustee and the Selling Debtor to the Purchased Interests free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.

- 7 -

### Section 363(f) Is Satisfied

R.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser were not, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and the Permitted Liens), be liable for any of such Liens, including, but not limited to, Liens in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors; (4) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax

- 8 -

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (7) any theories of successor liability.

S.      The Trustee may sell the Purchased Assets to Purchaser free and clear of all Liens against the Trustee, the Selling Debtor, its estate or any of the Purchased Assets (except for any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. With respect to any and all entities asserting a Lien, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Lien, with such Lien to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the assets free and clear of such Lien, (iii) such Lien is in *bona fide* dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

T.      Those holders of Liens against the Selling Debtor, its estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale

- 9 -

Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens, if any, in each instance against the Selling Debtor, its estate, any of the Purchased Assets, except as otherwise specifically provided by the Asset Purchase Agreement or this Order attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Selling Debtor and its estate may possess with respect thereto.

### Compelling Circumstances for an Immediate Sale

U.      To maximize the value of the Purchased Assets and to preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale.

V.      Given all of the circumstances of this chapter 7 case and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

W.      The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

- 10 -

X.    On February 3, 2009 the Trustee filed the Chapter 7 Trustee's Notice of Abandonment of Certain Assets Pursuant to 11 U.S.C. § 554 [Docket No. 394] which abandonment was withdrawn on February 16, 2009 by the Trustee filing a Notice of Withdrawal of Chapter 7 Trustee's Notice of Abandonment of Certain Assets Pursuant to 11 U.S.C. § 544 [Docket No. 422].

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED
AND DECREED THAT:

### General Provisions

1.    The relief requested in the Sale Motion is granted and approved and the Sale contemplated thereby is approved as set forth in this Order.

2.    All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

### Approval of the Asset Purchase Agreement

3.    The Asset Purchase Agreement and all ancillary or related documents, agreements or instruments and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase

- 11 -

Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.

5.    This Order shall be binding in all respects upon the Trustee, the Selling Debtor and its estate, all creditors of, and holders of equity interests in, the Selling Debtor (whether known or unknown), any holders of Liens against or on all or any portion of the Purchased Assets, the Purchaser and all successors and assigns of the Purchaser and the Purchased Assets. This Order shall inure to the benefit of the Trustee, the Selling Debtor, its estate, its creditor, the Purchaser and their respective successors and assigns.  The Asset Purchase Agreement shall not be subject to rejection.

### Transfers of the Purchased Assets

6.    Pursuant to sections 105(a), 363(b), 363(f), 365(a) and 365(f)(1) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Trustee's receipt of the Purchase Price, shall be free and clear of all Liens except any Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement.  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only

- 12 -

to the Permitted Liens and Assumed Liabilities. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be free and clear of (a) any and all Liens, including, without limitation, all Liens listed on Exhibit A hereto, except for Permitted Liens, and (b) all interests, liabilities, obligations or claims, including, without limitation, all "claims" within the meaning of section 101(5) of the Bankruptcy Code and any claims pursuant to any successor or successor-in-interest liability, control group liability or consolidated group liability theory. Except as otherwise specifically provided by the Asset Purchase Agreement or this Order, all Liens shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they will have as against the Purchased Assets, subject to any claims and defenses the Trustee, the Selling Debtor and its estate may possess with respect thereto.

7.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities holding Liens or interests in all or any portion of the Purchased Assets (other than Permitted Liens and the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Selling Debtor, the Purchased Assets, the operation of the Selling Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property, the Purchased Assets, such persons' or entities' Liens or interests in and to the Purchased Assets. On and after the Closing Date, the Trustee, the Purchaser and each such creditor is authorized to execute such documents and take all other actions as may be necessary to release Liens (except Permitted Liens) on the Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

- 13 -

8.    The Purchaser and, as the case may be, the Trustee, are authorized to remit payment directly to third parties in accordance with Section 6.2 of the Asset Purchase Agreement, and any agreement between the Trustee and the Senior Revolving Lenders in respect of administrative claims, pursuant to wire transfer or other payment instructions to be provided to them. Without limiting the foregoing, any payments to be made by or due from the Trustee to the Purchaser or a third party in accordance with the terms of the Asset Purchase Agreement shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

9.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser, in accordance with the terms of the Asset Purchase Agreement and this Order.

10.    All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

11.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any appropriate in order to cancel any of the Liens and other encumbrances of record except the Permitted Liens.

12.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

- 14 -

easements, and any other documents necessary for the purpose of documenting the release of all Liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee and the Purchaser are hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

13.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

14.    The proceeds from the sale of the Purchased Assets, less any normal and customary costs of closing including real estate taxes (excluding amounts paid by the Purchaser in accordance with the terms of the Asset Purchase Agreement), and net of an amount equal to (A) the amount of $1,273,250 for the benefit and use of the Selling Debtor, (B) the fees and expenses of Raymond James in the amount of $757,405.25 with respect to its role in the sale process, and (C) administrative expenses in an amount and subject to terms and documentation to be separately agreed between the Trustee and the Senior Revolving Lenders, shall be used first

- 15 -

to pay (and shall be paid directly to) the Senior Revolving Lenders until their claims are paid in full, including, without limitation, claims for any and all principal, unpaid hedging obligations, interest, attorneys' fees and expenses and advances made during the Chapter 7 Case, in each case, to the fullest extent provided under the Pre-Petition Loan Documents. Thereafter from the remaining proceeds from the sale of the Purchased Assets (after the claims of the Senior Revolving Lenders have been paid in full), the Trustee shall pay at Closing to the Junior Secured DIP Lenders the full amount of any indebtedness outstanding under the Junior Secured DIP Financing in an amount not to exceed $1,800,000. Any remaining proceeds from the sale of the Purchased Assets after the foregoing payments shall be delivered to the Trustee for distribution among the creditors of the Bankruptcy Estate in accordance with the order of priority applicable to their claims. The Trustee is authorized to make the distribution provided herein via wire transfer, or, check.

### Other Provisions

15.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Lien (other than a Permitted Lien) or interest arising under, out of, in connection with or in any way relating to the Selling Debtor, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) any claim of successor liability or similar theory or doctrine, including with respect to both (a) and (b),

- 16 -

without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with, on or in relation to the Purchased Assets.

16.    Except for the Permitted Liens and the Assumed Liabilities or as otherwise expressly provided for in this Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Trustee, the Selling Debtor or the estate arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, the Selling Debtor or any of its or their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising,

- 17 -

whether fixed or contingent, with respect to the Trustee, the Selling Debtor or the estate or any obligations of the Trustee, the Selling Debtor or the estate arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of, or businesses operated with, on or in relation to, any of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Liens and other claimants. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens and claims against or interests in the Selling Debtor or the Purchased Assets.

17.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and the Sale is duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.     Nothing contained in any order of any type or kind entered in (i) this chapter 7 case or any related proceeding subsequent to entry of this Order, shall conflict with, derogate from, or affect in any manner, the provisions of the Asset Purchase Agreement or the terms of this Order.

- 18 -

19.    Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

20.    Nothing in this Order or the Asset Purchase Agreement approves or provides for the transfer to Purchaser any coverage, rights or benefits under the liability insurance policies of the Selling Debtor with respect to claims arising out of or relating to any occurrence or event that happened prior to Closing, notwithstanding the transfer to the Purchaser, to the extent assignable or transferable in accordance with the terms and conditions of the applicable insurance policies or applicable Law, of all of the Company's insurance policies and rights and benefits related to the Purchased Assets or Assumed Liabilities.

21.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

23.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

24.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Asset Purchase Agreement, all

- 19 -

amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is a party or which has been assigned by the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

25.     In the event the Asset Purchase Agreement is validly terminated in accordance with its terms (or if a sale is delayed so that the Purchase Price is reduced below $22 million), the Trustee is hereby authorized to sell and convey (on a date to be agreed) the Purchased Assets to the Senior Revolving Lenders (or their designee) on a full credit bid basis pursuant to Section 363(k) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, and otherwise subject to all of the terms and conditions (to the extent applicable or relevant), and all Purchaser's protections and benefits, as set forth herein and in the Asset Purchase Agreement and related documents.

26.     The procedures for the assumption and assignment of certain executory contracts and unexpired leases designed by Purchaser are approved as follows:

(a)     On or before February 27, 2009, the Purchaser shall advise the Trustee which, if any, of the designated executory contracts and unexpired leases the Purchaser desires to have assigned to it.

(b)     No later than February 28, 2009, the Trustee shall promptly file a motion seeking to assume and assign the designated executory contracts and unexpired leases to Purchaser (the "Assumption and Assignment Motion"), and the Trustee shall serve a copy of the Assumption and Assignment Motion upon all nondebtor parties to all executory contracts and unexpired leases designated by the Purchaser for assumption and assignment to the Purchaser.    The Trustee shall include with the service of the Assumption and Assignment Motion, a copy of financial documents evidencing the Purchaser's financial credibility, willingness and ability of the Purchaser to perform under the designated executory contracts and unexpired leases.

- 20 -

WILMINGTON\853476 232068.000

—

(c)     All nondebtor parties to any executory contracts and unexpired leases designated to be assumed and assigned to the Purchaser by and through the Assumption and Assignment Motion shall have until March 5th, 2009 at 12:00 p.m. to file an objection to the proposed assumption and assignment of any executory contracts and unexpired leases to which it is a party.

(d)     The Bankruptcy Court shall consider the Assumption and Assignment Motion at a hearing on March 6, 2009 at 10:00 a.m., and any objections thereto.   At the hearing to consider the Assumption and Assignment Motion, the Trustee will present evidence to prove the Purchaser's financial credibility, willingness and ability to perform under the designated executory contracts and unexpired leases, and the Court and other interested parties therefore will have the opportunity to evaluate the Purchaser's ability to provide adequate assurance of future performance under the contracts or leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

(e)     Any objection to the cure amount or adequate assurance of future performance that is not timely filed shall be deemed waived.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement or the Sale Motion, the Purchaser is not purchasing and shall not have any rights under any agreements with the Hard Rock Entities or any rights in or to the Hard Rock Marks[2].

29.     Absent agreements by the Purchaser and the Hard Rock Entities to the contrary, the Purchaser and the Hard Rock Entities have agreed and it is so ordered that any Inventory (as referred to in the Asset Purchase Agreement) containing the Hard Rock Marks shall be destroyed

---

[2] Unless otherwise indicated in this Order, capitalized terms in the paragraphs 28, 29 and 30 of this Order shall have the meaning given to them in the License Agreement by and between Hard Rock Café International (USA), Inc. and  FHTP, LLC dated as of December 12, 2002, which was rejected by the Trustee pursuant to the Order Granting First Omnibus Motion of Alfred T. Giuliano, Interim Chapter 7 Trustee, (I) Rejecting Certain Executory Contracts and Leases or Real and Personal Property and (II) Establishing Bar Date For Filing Proofs of Claim for Related Rejection Damages [Docket No. 431].

- 21 -

by the Purchaser in the presence of a representative of the Hard Rock Entities on or before the sixtieth (60th) day after the date of entry of this Order. Pending agreement or destruction as contemplated by the preceding sentence, the Purchaser shall not use or sell any such Inventory.

30.    Absent agreement by the Purchaser and the Hard Rock Entities to the contrary, the Purchaser and the Hard Rock Entities have agreed and it is so ordered that the Purchaser shall within sixty (60) days of the date of entry of this Order, at Purchaser's expense, comply with all of Hard Rock's reasonable instructions to de-identify, alter, modify and change both the appearance of the Park and any Equipment (as referred to in the Asset Purchase Agreement) to remove all elements comprising the Licensed Rights from the Park and any Equipment. At a minimum, such alterations, modification and changes will include (i) removing all exterior and interior signage; (ii) repainting and, where applicable, recovering both the exteriors and interiors to remove distinctive colors and designs from the walls; (iii) removing all fixtures and other distinctive furnishing, (iv) changing any distinctive staff uniforms, and (v) immediately discontinuing the use or display of the Licensed Marks, including all usage of the Licensed Marks in connection with the advertisement and promotion of the Park.

31.    The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Sale Motion or otherwise waived.

32.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

33.    To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement, the terms of this Order shall control.

- 22 -