IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>HRP MYRTLE BEACH<br>HOLDINGS, LLC., et al.[1]<br><br>Debtors | : Chapter 7<br>: Case No: 08-12193 (KJC)<br>:<br>: (Jointly Administered)<br>:<br>:<br>: |
| Alfred T. Giuliano, Chapter 7 Trustee of<br>HRP Myrtle Beach Holdings, LLC, et al.,<br><br>Plaintiff,<br><br>v.<br><br>AIG Domestic Claims, Inc. n/k/a<br>Chartis Claims, Inc.,<br><br>Defendant | :<br>:<br>:<br>: Adv. No: 12-_____ (KJC)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:/ |

**COMPLAINT (A) FOR TURNOVER OF PROPERTY OF
THE ESTATES PURSUANT TO 11 U.S.C. § 542; (B) FOR
UNJUST ENRICHMENT; AND (C) TO AVOID AND RECOVER
PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550**

Plaintiff, Alfred T. Giuliano, Chapter 7 Trustee (hereinafter referred to as "Plaintiff" or the "Trustee") for the bankruptcy estates of HRP Myrtle Beach Holdings, LLC and its related debtor affiliates (collectively, the "Debtors"), by his undersigned attorneys, in support of this complaint (the "Complaint") brought against AIG Domestic Claims, Inc. n/k/a Chartis Claims, Inc. (the "Defendant") (a) for turnover of property of

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers follow in parenthesis): HRP Myrtle Beach Holdings, LLC (1546), HRP Myrtle Beach Holdings Capital Corp. (5553), HRP Myrtle Beach Operations, LLC (1625), HRP Myrtle Beach Capital Corp. (4272), HRP Myrtle Beach Management, LLC (0297), HRP Global Management LLC (2138), and We Got Your Back Security Co., LLC (3877). The address of each debtor is 211 George Bishop Parkway, Myrtle Beach, South Carolina 29579.

4373764/2
4373764/2

the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 542; (b) for unjust enrichment; and (c) to avoid and recover preferential transfers pursuant to 11 U.S.C. §§ 547 and 550, and in support thereof, the Trustee hereby alleges upon information and belief as follows:

## NATURE OF THE CASE

1. By and through this Complaint, the Trustee seeks to recover pursuant to 11 U.S.C. § 542 certain property of the Debtors' estates currently in the possession of the Defendant. Further, the Trustee seeks the return of the Debtors' property which is being unjustly used and enjoyed by the Defendant at the expense of the Debtors' estate. Finally, by and through this Complaint, the Trustee seeks to avoid and recover all transfers made to the Defendant during the 90 days immediately prior to the Debtors filing for bankruptcy pursuant to 11 U.S.C. §§ 547 and 550.

## THE PARTIES

2. The Trustee is the duly appointed Chapter 7 trustee for the Debtors' bankruptcy estates, and pursuant to 11 U.S.C. § 704, the Trustee has the authority to investigate the financial affairs of the Debtors and litigate claims on behalf of the Debtors' estates.

3. Upon information and belief, at all relevant times, Defendant is a one of the largest insurers in the world, and the issuer of certain insurance contracts to the Debtors. Further, upon information and belief, the Defendant is a corporation, partnership, other incorporated association, or individual that may be served with process in this action by mailing first class mail, postage prepaid, a true a correct copy of this Complaint and Summons pursuant to Federal Rule of Bankruptcy Procedure 7004(b).

4373764/2
4373764/2

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b).

5. Venue of these proceedings and this matter is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6. The Debtors owned and operated Hard Rock Park (the "Park"), a 50-acre destination theme park located in Myrtle Beach, South Carolina. The Park opened on time in April 2008, after nearly two years of construction.

7. On or about April 28, 2006, the Debtors entered into a contract for insurance with the Defendant to provide an owner controlled insurance program (OCIP) insurance coverage for both workers compensation claims (identified as policy WC 367-87-05) and general liability claims (identified as policy GL 178-02-75) arising during a construction of the Park.

8. The policy period for the OCIP insurance contract began on April 28, 2006 ending on May 18, 2008. The OCIP insurance contract was amended by and subject to a document entitled "Large Risk Rating Plan Endorsement," which, by its terms limited the term of the insurance coverage contract to the duration of the construction project. Attached as composite Exhibit "A" is a complete copy of the 2006-2008 insurance contract along with the "Large Risk Endorsement" and a document entitled "Schedule of Policies and Payments," all of which form a part of the referenced insurance policy (collectively, the "OCIP Policy").

8. The Debtors satisfied the collateral deposit requirement under the OCIP Policy by paying the Defendant $2,539,093 in two installments, including one payment of $1,581,955 and a second payment of $957,138, to collateralize the Debtors' self-retention for the OCIP Policy.

9. By its terms, the OCIP Policy required that the Debtors remit payment of a premium consisting of amounts for expenses and excess losses as well as a collateral deposit for the Debtors' self-insured retention of $250,000 per claim.

10. The actual losses claimed and/or paid under the OCIP Policy as well as any expenses to be allocated to the Debtors were less than the amount of projected by the Defendant's actuarial study that determined the collateral requirement. Specifically, the Defendant remitted payments aggregating $947,926.76 on account of certain employee claims.

11. In calculating the amount of the claims paid under the OCIP Policy from the Debtors' collateral, the Defendant deducted from the collateral payments made on employee claims which exceeded the $250,000 deductible. Based upon the actual amounts to be charged against the collateral, the Defendant should have drawn no more than $800,539.19 from the Debtors' collateral.

12. Construction of the Park was completed on or before April 14, 2008, and, by its own provisions, the OCIP policy terminated.

13. On or before April 14, 2008, the Debtors began negotiations with the Defendant to provide workers compensation (under policy number WC1929273) as well as general liability insurance coverage for completed operations at the Park, with effective dates of coverage proposed to become effective approximately April 14, 2008.

4373764/2
4373764/2

The contemplated insurance program was proposed to have a self-insured retention that also required, as a condition precedent, deposit of cash collateral.

14. Agents for the Debtors offered that the Defendant should use of portions of the cash collateral paid under the original construction OCIP policy in lieu of the cash collateral requirement for the continuing operations policy under negotiations, however the Defendant rejected the offer, and negotiations continued.

15. In or about August 2008, in anticipation of reaching an agreement with the Defendants to provide a policy of insurance to cover continuing operations of the Park, the Debtors entered into a claims service agreement calling for the Defendant to provide claims administration for claims made between April 14, 2008 and April 14, 2009, and on August 28, 2009, the service agreement was countersigned by the Defendant's representative. A copy of the fully executed claims service agreement is attached hereto as Exhibit "B."

16. Without reaching an agreement with Defendant to satisfy the collateral requirements under the new continuing operations policy (by transferring collateral from the original OCIP Policy to the proposed continuing operations policy), but anticipating that an agreement might be reached, the Debtors countersigned the proposed April 14, 2008, insurance contract on or about September 23, 2008. It was agreed between the Debtors' agent and the Defendant that the countersignature was subject to reaching an agreement regarding the proposed transfer of the collateral being held by Defendant under the original OCIP policy to the policy proposed to become effective April 14, 2008.

4373764/2
4373764/2

17. The Debtors and the Defendant never reached an agreement concerning the request to re-allocate the collateral posted under the OCIP policy to the new continued operations policy operations policy.

18. The Debtors never paid the required cash collateral for the completed operations policy and there was no agreement reached for an insurance policy to begin April 14, 2008.

19. Pursuant to the claims service agreement, the Debtors paid $45,918.00 to the Defendant, however, there was no insurance agreement to be "serviced" at the time of the inception of this service agreement since the original OCIP construction agreement, effective only during construction, had expired by its own terms and no new claims were asserted against the Debtors under that policy. Additionally, the proposed operations policy was never consummated and therefore never became a binding contract between the parties.

20. Upon information and belief, the Defendant has wrongfully and without legal authority charged and collected from collateral it holds for the OCIP Policy to pay premiums for the claims service policy and to satisfy premium requirements and/or collateral requirements under the non-existent continued operations policy.

### The Debtors' Bankruptcy Filing

21. The Debtors commenced these bankruptcy cases on September 24, 2008 (the "Petition Date"), by the filing of voluntary petitions for relief under Chapter 11 of title 11 (the "Bankruptcy Code"), and on September 29, 2008, the Bankruptcy Court entered an Order authorizing the joint administration of the bankruptcy cases [Docket No. 38].

22. On January 6, 2009, the Court entered an order [Docket No. 335] converting each Debtors' cases to Chapter 7 of the Bankruptcy Code and on the same day, the office of the United States Trustee appointed the Trustee. The United States Trustee has appointed Alfred T. Giuliano as Chapter 7 Trustee for the Debtors' bankruptcy estates.

23. On February 18, 2009, the Bankruptcy Court entered an Order (I) Authorizing Sale of Hard Rock Park Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Establishing Procedures for the Assumption and Assignment of Certain Designated Contracts and Unexpired Leases [Docket No. 436] (the "Sale Order").

24. Shortly after the Sale Order, the Trustee sold the Park and none of the Debtors' estates has an ownership interest in the Park.

25. Upon information and belief, there are no active operations upon the grounds of the Park, and the buildings erected upon the grounds of the Park remain idle.

26. Upon information and belief, the Defendant remains in possession of $1,738,554.81 of the Debtors' collateral.

## COUNT I
## Turnover of Property of the Estate- 11 U.S.C. § 542

27. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

28. Prior to the Petition Date, the Debtors remitted payments aggregating $2,539,093 to the Defendant to be held as collateral.

4373764/2
4373764/2

29. Since receiving the $2,539,093 from the Debtors, the Defendant appropriately applied $800,539.19 to certain claims paid pursuant to the OCIP Policy, leaving a balance of $1,738,554.81 of the Debtors' collateral (the "<u>Retained Collateral</u>").

30. Upon information and belief, few if any unresolved claims remain against the Debtors which would be drawn against the Retained Collateral.

31. The Retained Collateral is property of the Debtors' bankruptcy estates within the meaning of 11 U.S.C. §§ 541 and 542(a).

32. The Retained Collateral is property that the Trustee may use or sell within the meaning of 11 U.S.C. §§ 542(a) and 363.

33. The Defendant has had possession, custody or control of the Retained Collateral during the Debtors' bankruptcy cases

34. The Trustee has made demand for the turnover of the Retained Collateral that exceeds the necessary value of any claims, and the Defendant has and continues to refuse to turn over any of the Retained Collateral to the Trustee.

35. The estates are entitled to turnover of the Retained Collateral and a full accounting thereof, plus prejudgment interest thereon as provided by law, plus costs of action and attorneys' fees.

## COUNT II
<u>Unjust Enrichment</u>

36. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

37. As a result of the failure of the Defendant to return the Retained Collateral to the Trustee, the Defendant has obtained unearned interest.

38. The Defendant continues to enjoy the exclusive use and benefit of the Retained Collateral including any interest earned by the Defendant on account of its retention of the Retained Collateral.

39. The Debtors' estates have suffered harm as a direct and proximate result of the Defendant's continued retention of the Retained Collateral.

40. Under the circumstances, it is inequitable for the Defendant to retain the benefit of the Retained Collateral and any interest earned thereon by the Defendant.

41. The Trustee is entitled to the full and immediate repayment of the amount of the Retained Collateral, plus any interest earned by the Defendant on account of its retention of the Retained Collateral.

### COUNT III
### Avoidance of Preference Transfers - 11 U.S.C. § 547

42. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

43. On or within 90 days before the Petition Date, that is between September 24, 2008 through January 6, 2009 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, direct deposit or otherwise to certain entities, including the Defendant.

44. The Trustee has determined that one or more of the Debtors made transfers to the Defendant during the Preference Period in an aggregate amount not less than $70,918.00 (hereinafter collectively referred to as the "Transfers") directly to or for the benefit of the Defendant herein. A list of the Transfers is attached hereto as Exhibit "C."

4373764/2
4373764/2

45. The Debtors made the Transfers to the Defendant on account of antecedent debt in connection with the Insurance Policies.

46. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by one or more of the Debtors of an interest of the Debtors in property to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint as to include: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (i.e., but not exclusively, 11 U.S.C. §§ 542, 544, 545, 548 and 549) (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

47. Defendant was a creditor of one or more of the Debtors at the time of the Transfers within the meaning of 11 U.S.C. § 101(10)(A). At the time of the Transfers, Defendant had a right to payment on account of an obligation owed to Defendant by one or more of the Debtors.

48. The Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Transfers either reduced or fully satisfied a debt then owed by the Debtors to Defendant.

49. The Transfers were made on account of an antecedent debt because the Transfers were on account of a debt obligation for which the Debtors were legally bound to pay before the Transfers were made.

50. The Debtors were insolvent at all times during the Preference Period within the meaning of the United States Bankruptcy Code, in that the sum of its debts was greater than the fair value of its assets, 11 U.S.C. §§ 101(32)(A) and 547(b)(3).

51. As a result of the Transfers, Defendant received more than it would have received if: (i) the Debtors' cases were under Chapter 7 of the United States Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payment of its debt under the provisions of the United States Bankruptcy Code.

52. In accordance with the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 547.

## COUNT IV
### Recovery of Avoided Transfers - 11 U.S.C. § 550

53. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

54. The Defendant was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

55. Pursuant to 11 U.S.C. § 550(a), the Trustee is entitled to recover from Defendant the Transfers, plus interest thereon to the date of payment and the costs of this action.

### RESERVATION OF RIGHTS

56. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant during the Preference Period or other property of the Debtors' estates which remain in the possession of the Defendant. It is the intention of the Trustee to avoid and recover all

transfers made by one or more of the Debtors of an interest of the Debtors in property and to or for the benefit of the Defendants or any other transferee and to recover all property of the Debtors' estates. The Trustee reserves its right to amend this Complaint, including Exhibit A, to include: (i) further information regarding the Transfers, including but not limited to the identity of the transferor, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action that may become known to the Trustee at any time during this adversary proceeding, including without limitation causes of action under 11 U.S.C. §§ 542, 544, 545, 548 and 549, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order providing the following relief against Defendant:

(a) The Court enter judgment for the Trustee and against the Defendant;

(b) Pursuant to 11 U.S.C. § 542, judgment be entered in favor of the Trustee and against the Defendant requiring that the Defendant turnover to the Trustee all property of the estates, including $1,738,554.81, plus prejudgment interest thereon as provided by law, plus costs of action and attorneys' fees;

(c) Granting judgment in favor of the Trustee and against the Defendant for $1,738,554.81, plus prejudgment interest thereon, for the Defendant's unjust enrichment by its continued retention of the Retained Collateral;

(d) Pursuant to 11 U.S.C. §§ 547 and 550, judgment be entered in favor of the Trustee and against the Defendant, in an amount at least $70,918.00 (plus such additional transfer amounts that Trustee learns, through discovery or otherwise, were made by the

4373764/2
4373764/2

Debtors to the Defendant during the Preference Period), plus interest at the legal rate from the date of the Transfers, together with all costs of this action; and

    (e)    Granting to the Trustee such other and further relief as the Court deems just and proper.

Dated: March 23, 2012

MORRIS JAMES LLP

/s/ JWf

Jeffrey R. Waxman (No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800

-and-

Reed S. Tolbert, Esquire
Reed Stewart Tolber P.A.
302 Park Street, Court Square
Charlottesville, VA 22902
Telephone: (434) 295-6659

*Counsel to Alfred T. Giuliano,
Chapter 7 Trustee*

4373764/2
4373764/2